# ROBERT L. GRAHAM ET AL.

## vs.

# CHARLES D. GAITHER, POLICE COMMISSIONER.

*Sunday Law—Enforcement—Mandamus to Police Commissioner.*

Code, art. 27, sec. 436, forbidding the doing of work or any bodily labor on Sunday, is of the same binding effect as any other provision of the criminal code, and applies to the play-. ing of baseball on Sunday by professionals.         pp. 341, 342

A writ of mandamus must issue as prayed, if it issue at all.

p. 344

The writ of mandamus will not issue when it would be nugatory, as to compel certain action on dates that are past.     p. 344

The police commissioner of Baltimore City has large discretion as to the best method to be pursued in order to stop the violation of law.             p. 345

In a mandamus proceeding against the police commissioner of Baltimore City to compel him to enforce the Sunday law in connection with the playing of professional baseball games, *held* that the averments in the respondent's answer, including denials of practically every allegation in the petition, and statements as to the demonstrated unwillingness of grand and petit juries to co-operate in prosecutions and convictions for such violations of law, were sufficient to make it necessary for the petitioner to reply thereto, so that the court might have evidence before it to determine whether the facts would justify the issue of a mandamus.         p. 346

An officer clothed with a power to act may be compelled by mandamus to exercise that power, but his honest discretion in the exercise thereof cannot be controlled.         p. 349

The right to a mandamus to the police commissioner, in connection with the enforcement of the Sunday law against professional baseball playing, was not made out by a showing that the commissioner not only did not adopt the method of

enforcement which the petitioners insisted upon as the best, but that he adopted another method which, although authorized by law, had proved ineffective, not because the commissioner did not do what he could to make it effective, but because another department of the law did not do its part. pp. 345-349

If the commissioner was honest in what he did, and the way of enforcing the law which he adopted was one of those authorized, the court could not, by a writ of mandamus, compel him to adopt the other way, unless it was certain that his method was and would be futile, and this was shown by proof.

pp. 345-349

*Decided January 25th, 1922.*

Appeal from the Baltimore City Court (DAWKINS, J.).

Petition for mandamus by Robert L. Graham and others against Charles D. Gaither, Police Commissioner of Baltimore City. From an order denying the writ, petitioners appeal. Affirmed.

Section 744 of the Revised Edition of the Charter of Baltimore City, referred to in the opinion, is as follows:

"The duties of the Board of Police Commissioners hereby created shall be as follows: They shall at all times of the day and night, within the boundaries of the City of Baltimore, as well on the water as on the land, preserve the public peace, prevent crime and arrest offenders, protect the rights of persons and property, guard the public health, preserve order at primary meetings and elections, and at all public meetings and conventions and on all public occasions and places, prevent and remove nuisances in all the streets and highways, waters and watercourses, and all other places, provide a proper police force at every fire for the protection of firemen and property, protect strangers, emigrants, and travelers at all steamboat, ferry-boat and ship landings and railway stations, see that all laws relating to elections, and to the observance of Sunday, and regarding pawnbrokers, gambling, intemperance, lotteries and lottery

policies, vagrants, disorderly persons and the public health
are enforced, and also to enforce all laws, ordinances of the
Mayor and City Council of Baltimore, not inconsistent with
the provisions of this sub-division of this article, or of any
law of the State which may be properly enforceable by a
police force; and in case the said Board of Police Commis-
sioners shall have reason to believe that any person within
the limits of the City of Baltimore intends leaving the city
for the purpose of committing any breach of the peace, or of
violating any law of the State beyond the limits of the city,
upon the Chesapeake Bay or on any river, creek, inlet,
watercourse, or at any other place on land or water within
the State of Maryland, it shall be the duty of the said Board
of Police Commissioners to. cause such person to be followed,
and to take the most effectual means for the suppression and
prevention of such outrage, when any such shall be attempt-
ed, and to cause the arrest of all such offenders; provided,
however, that if any crime be actually committed by such
person, the offender shall be delivered to the proper juris-
diction for trial and punishment; any person charged with
the commission of crime in the City of Baltimore and
against whom criminal process shall have issued, may be
arrested upon the same in any part of the State by the
police force created under this sub-division of this article,
under such rules and regulations as the Board of Police
Commissioners may adopt; and the said Board shall have
power to summon witnesses before it and to administer oaths
or affirmations to such witnesses whenever in the judgment
of the said Board it may be necessary for the effectual dis-
charge of their duties under this sub-division of this article;.
and any person failing to appear in answer to said summons,
or refusing to testify, shall be subject to a penalty of not
less than twenty-five nor more than fifty dollars, to be recov-
ered by civil action in the name of the State, to the use of
the said Board, or by indictment in the Criminal Court of
Baltimore; false swearing on the part of any such witness
shall be deemed perjury, and shall be punished as such."

The cause was argued before Boyd, C. J., Thomas, Pattison, Urner, Adkins, and Offutt, JJ.

*Isaac Lobe Straus,* for the appellants.

The authorities overwhelmingly support the contentions of appellants, and include many cases which are precisely in point: *Moores, Mayor,* v. *State, ex rel. Dunn,* 71 Neb. 522; *Sweet* v. *Smith* (Mich.), 117 N. W. 59; *Goodell* v. *Woodbury,* 71 N. H. 378; *State* v. *Hoboken,* 75 N. J. L. 315; *People* v. *Kennedy,* 169 N. Y. Supp. 1022; *People* v. *Watt,* 188 N. Y. Supp. 559; *In re Whitney,* 3 N. Y. Supp. 838; *State* v. *Williams,* 45 Oreg. 314; *People* v. *Peck,* 82. N. Y. Supp. 265; *People* v. *Byrne,* 9 Abb. N. C. 127, note; *People* v. *Mayor,* 59 How. Prac. (N. Y.) 277; *People ex rel. Mullen* v. *Newton,* 20 Abb. N. C. 387; *State* v. *Cummings,* 17 Neb. 311; *People* v. *Listman,* 82 N. Y. Supp. 263.

Mandamus lies to compel an officer to take cognizance of a criminal charge preferred by affidavit, and thereon to issue his warrant of arrest: *Benners* v. *State,* 124 Ala. 97, 191; *Attorney General* v. *Police Justice,* 40 Mich. 631; *State* v. *Laughlin,* 75 Missouri, 358; *State* v. *Nebraska,* 20 Neb. 304; *People* v. *Swift,* 59 Mich. 529.

The acts which the appellee was required to perform were ministerial, and not judicial or discretionary: *Roberts* v. *U. S.,* 176 U. S. 221; *Lane* v. *Hoglund,* 244 U. S. 174, 182; *Ballinger* v. *Frost,* 216 U. S. 240; *Barney* v. *Dolph,* 97 U. S. 652; *U. S.* v. *Shurz,* 102 U. S. 378, 403; *Garfield* v. *Goldsby,* 211 U. S. 261-262; *Association of Credit Men* v. *Bowman,* 113 Pac. 63, 65-66; *Stephens* v. *Jones,* 123 N. W. Rep. 705, 708; *Thompson* v. *Gibbs,* 97 Tenn. 489; *Brokaw* v. *Commissioners,* 130 Ill. 432; *Young* v. *Carey,* 56 N. E. 960; *Lay* v. *Hoboken,* 75 N. J. L. 315; *Palmer* v. *Allen,* 135 Pac. 1172; *People* v. *Knight,* 189 Ill. App. 449; *Commissioners* v. *State, ex rel. Brown,* 147 Ind. 476; *High, Extraordinary Legal Remedies,* sections 413 and 415.

The cases of *People* v. *Busse*, 238 Ill. 599; *People* v. *Dunne*, 219 Ill. 346; *State* v. *Murphy*, 3 Ohio Circuit Ct. Rep. 332; *State* v. *Brewer*, 39 Wash. 65; *Gowan* v. *Smith*, 157 Mich. 443, and *Alger* v. *Seaves*, 138 Mass. 331, relied on by the appellee, are wholly unlike and inapplicable to the present case, because in each of them the mandamus sought was to compel a general course of official conduct covering the enforcement of liquor laws applicable to hundreds and thousands of saloons in large cities and embracing broad, comprehensive and, in many respects, discretionary administration of such laws.

The case of *State* v. *Francis*, 95 Wis. 44, is absolutely inapplicable, it involving a petition for a mandamus to compel the arrest and prosecution of a number of persons for past violations of the law, and also to compel a general course of official conduct, rather than the performance of a particular act or duty.

*Alexander Armstrong, Attorney General,* and *Allan H. Fisher, Assistant Attorney General,* for the appellee.

The element of discretion enters into the performance of the duties imposed upon the respondent by virtue of sections 744-5 of the Baltimore City Charter: *Cull* v. *Wheltle*, 114 Md. 58; *Wear* v. *Francis*, 95 Mo. 44; *Gowan* v. *Smith*, 157 Mich. 443; *State* v. *Williams*, 45 Ore. 314, 67 L. R. A. 167; *State, ex rel. Hawke* v. *Davis*, 137 N. E. 348; *Goddell* v. *Woodbury*, 71 N. H. 378.

Courts will not compel a public official by mandamus to exercise his discretion in any particular manner: *Wear* v. *Francis*, 95 Mo. 44; *Gross* v. *Mayor and City Council*, 111 Md. 544; *Consolidated Gas Co.* v. *Graff*, 78 Md.1x (unreported case); *Miles* v. *Bradford*, 22 Md. 171; *Manger* v. *Board of Examiners*, 90 Md. 659; *Green* v. *Purnell*, 12 Md. 329.

Courts will not compel police officials to cause the arrest without warrant of any person offending against the law:

*Wear* v. *Francis,* 95 Mo. 44; *State* v. *Williams,* 45 Ore. 314, 67 L. R. A. 167, 77 Pac. 965; *State, ex rel. Wear* v. *Francis,* 94 Mo. 44; *Gowan* v. *Smith,* 157 Mich. 443; *State of Ohio, ex rel. Clark* v. *Murphy,* 3 Ohio Circuit Court Report (old series), 352.

Mandamus will not lie unless the duty to be performed is specific in its nature and such that the court can prescribe a definite act or series of acts which will constitute a performance of the duty: *People* v. *Dunne,* 219 Ill. 346, 76 N. E. 570; *People* v. *Busse,* 238 Ill. 593, 87 N. E. 840, 28 L. R. A. (N. S.) 246; *People* v. *Listman,* 82 N. Y. 784.

The writ will not issue where its issuance would compel the court to exercise a constant or recurring supervision over the daily acts of the police commissioner and a definite control of the discretion with which he is clothed by law: *Gowan* v. *Smith,* 157 Mich. 443; *State* v. *Brewer,* 39 Wash. 65, 80 Pac. 1001.

Courts are not created to conduct municipal affairs, and the remedy for a general violation of public duty is not judicial: *Fitzgerald* v. *Whipple,* 41 Mich. 548, 49 N. W. 992; *Alger* v. *Seaver,* 138 Mass. 333; *People* v. *Listman,* 82 N. Y. Supp. 784.

Where the police commissioner has not refused to enforce the law, but has enforced it in the only manner in which he can legally enforce it, that is, by complaint and prosecution, mandamus will not lie: *Gowan* v. *Smith,* 157 Mich. 443.

Where the writ is no more effective than the statute, it will not lie: *State* v. *Brewer,* 39 Wash. 65, 80 Pac. 1001.

The issuance of the writ in this case would substitute the discretion of the judicial branch of the government for that of the executive branch: *People* v. *Dunne,* 219 Ill. 346, 76 N. E. 570.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from an order and judgment of the lower court, which overruled a demurrer to the answer of the respondent and entered a final judgment for the defendant, on

a petition for a mandamus filed by the appellants against
Charles D. Gaither, Police Commissioner for· the City of
Baltimore. The object of the mandamus, as shown by the
prayers of the petition, was to prevent and restrain the re-
spondent from permitting the playing of professional baseball
at Oriole Park on Sunday during the months of April, June,
July, August and September, 1921, to command and require
him to enforce and execute the laws of Maryland relating to
the. observance of Sunday and against Sabbath breaking on
those Sundays, and to enforce and execute section 436 of
article 27 of the Code upon said days, to prevent at said
Oriole Park the commission of the crime of violating said
Sunday law "by arresting or causing the arrest of all the
participants, including both the baseball players taking part
in said professional games as well as the managers holding or
conducting the same, or causing the same to be held or con-
ducted, or aiding or abetting the holding or conducting of
the same, and further ordering and requiring such other
relief and protection to your petitioners and their rights
.aforesaid as may be proper and necessary in the premises."
After the court overruled the demurrer, and the attorneys
for the plaintiffs informed the court that the plaintiffs de-
·clined to file any further pleading or proceeding, the judg-
·ment for the defendant was rendered.

The petition, after setting out and describing the several
petitioners at length, alleges that the respondent was ap-
pointed under and by virtue of chapter 559 of the Acts of
1920, which repealed and re-enacted section 740 of article
4 of the Code of Public Local Laws (reference being to the
Revised Edition of the Charter of 1915)—the Act of 1920
authorizing the appointment of one Police Commissioner
instead of a Board of Police Commissioners as formerly, and
providing that he should have and exercise all the powers of
the board. Section 744, which sets out at length the duties
·of the Board of Police Commissioners, now devolved upon
the respondent, will be published in connection with this
opinion. Amongst other things he is required to see that all

laws relating to the observance of Sunday are enforced.' Section 436 of article 27 of the Code is set out in full in the petition, and reference is made to *Levering* v. *Park Commissioners,* 134 Md. 48, to show that this Court has decided that the playing of baseball on Sunday by professionals and others who may be hired and paid for that purpose, and whose occupation and employment is the playing of such games, "clearly contravenes the provision of the Code which declares that 'no person whatsoever shall work or do any bodily labor on the Lord's Day commonly called Sunday * * * and every person transgressing this section and being thereof convicted before a justice of the peace shall forfeit five dollars to be applied to the use of the county.' "

It is alleged that at Oriole Park professional baseball games were about to be played, on each and every recurring Sunday during the months named, by professional players, hired and paid for that purpose, etc., in violation of section 436 of article 27, which will be and constitute upon each of said Sundays crimes against the laws and dignity, the peace and government, of the State. It is alleged that they will be attended by large crowds and throngs of spectators at Oriole Park, accompanied by the loud shouts and noises which invariably occur during the holding and progress of games of professional baseball. It is averred that the plaintiffs called with their counsel upon the respondent, and informed him that such games were about to be played, and submitted to him that it is his official duty to prevent said crimes, arrest the offenders and see that the laws relating to the observance of Sunday are enforced, etc.; "that thereupon, although the defendant heard and treated those of your petitioners and their counsel, who called upon and submitted the matters aforesaid to him, with the utmost courtesy and attention, nevertheless he clearly and positively declared that he did not consider it to be his official duty to interfere with the holding, playing and carrying on of said professional baseball games by said professional players at said Oriole Park on said Sundays aforesaid, although said games are about to

be held, played and carried on, as herein above stated, and as
represented to him, the defendant, and the defendant further-
more distinctly and positively declared that he did not intend
to interfere with or prevent the holding of said professional
baseball games as aforesaid, or to cause the same to be in-
terfered with or prevented by the police force under his,
the defendant's, direction and control, or to arrest or cause
the arrest of any of the professional baseball players taking
part in said games, or of any person or persons engaged and
participating in the holding, playing, carrying on or conduct
of the same, but that he, the defendant, intended to permit
the said games to be held then and there, as aforesaid, with-
out interference upon his part or upon the part of the police
force under his, the defendant's, direction and control, and
without arresting or causing the arrest of the participants
in and the managers and directors of said games or any of
them; the defendant, the Police Commissioner for Baltimore
City, giving as his reason for declining to interfere with the
holding, playing and carrying on of said games or to arrest
the professional participants therein or the managers there-
of, or any of them, as aforesaid, that the manager of one of
the professional baseball clubs or teams, which participated
in a game of professional baseball at said Oriole Park on
one of the Sundays of the spring or summer of 1919, had
been arrested for criminally violating the said Sunday law
of Maryland by the holding and carrying on of said Sunday
professional baseball game at said Oriole Park, and that the
indictment or charge against said offender had never been
prosecuted in the Criminal Court of Baltimore City."

It is further alleged that the refusal of the respondent will
cause additional municipal expenses to be incurred, and will
result in an unlawful and unauthorized increase in the rate
of taxation for local purposes in the City of Baltimore, that
the petitioners will suffer irreparable and remediless injury
and damage, and the public policy of the State and the laws
thereof would be thwarted and nullified and the community
and public generally hurt and damaged, etc.

The answer admits that some of the petitioners called with their counsel upon the defendant, and requested the defendant to enforce the laws of Maryland relating to the observance of Sunday, and to prevent the contemplated and intended playing of baseball on Sunday during the months named, but specifically denies each and every one of the charges against him set out above, emphatically and unreservedly. It will not be necessary for us to quote from the answer, but it is sufficient to say that they are not simply general denials, but each charge is denied, referring to the language used in the petition.

The answer further alleges "that he has fully and completely enforced the Sunday laws in Baltimore City to the best of his ability and judgment with the force at his disposal"; that he began his term of office on June 1st, 1920, and on the 21st of that month he presented to the foreman of the grand jury for the May term of court charges against the president of the Baltimore Baseball & Exhibition Company for working and doing bodily labor on Sunday, June 20th, 1920, at Oriole Park, and allowing and ordering his employees to work and do bodily labor at the time and place mentioned, in violation of the law, and also for selling certain goods, wares and merchandise, to wit, score cards, entitling the holder to admission to the baseball game, to a large number of spectators, whose names and addresses were given to the grand jury, and also the names of a large number of witnesses and of all the players who took part in the game for both teams, the names and addresses of each and every person who sold score cards, and of all employees working on the grounds. He was afterwards informed by the foreman that the grand jury declined to take any action, and practically the same thing was alleged as to the September term grand jury.

The answer then alleges that there are several methods of bringing to the bar of justice violators of the law: one, by summarily arresting them; two, by causing warrants upon oath to be issued for the arrest of alleged offenders; three,

by referring the charges to the grand jury; that during his term of office he has avoided when possible the making of summary arrests, especially where the alleged offender is a citizen of Baltimore, and may be apprehended without difficulty; that he considered it a proper police method to avoid the taking of a citizen by force to the station house when such peremptory action can be avoided without injury to the State; that "your respondent further avers that the summary arrest frequently causes disorder, riot, bloodshed, inasmuch as an alleged offender will more often resist during the stress of excitement, especially in the presence of a large crowd." Again it is said in the answer "that police experience convinces your respondent that it would probably cause a riot to physically arrest a large proportion of the people who violate the Sunday laws, especially where the violation occurred publicly among a large crowd or gathering. In order to make arrests at Oriole Park on a Sunday, it would require the presence of about two hundred policemen, and even with this large force, there will be grave danger of mob violence. That your respondent does not think it his duty to take steps when the petit juries of Baltimore City have uniformly declined to find convictions in similar cases even though the facts set out in the indictments were conceded."

The respondent alleges that it is his intention to present to the grand jury all the facts and circumstances, with a list of witnesses whenever a game of baseball is played at Oriole Park on Sunday, and if he "feels at any time that the dignity and peace of the State requires him to use other and different methods, he will resort to them"; that he "intends to bring to trial every offender of the Sunday laws whom the grand jury will present and use every other method which, in his judgment, will aid in the prevention of crime."

The answer goes on to give reasons why he thinks he could not rely on a petit jury to convict, and says: "The petitioners have in fact requested your respondent to use force to the limit to arrest summarily certain alleged violators of the

law, whom the grand jury of the City of Baltimore has, on numerous occasions and twice within your respondent's incumbency, declined to present. Your respondent avers that he has always enforced the Sunday laws and will continue to enforce them, but your respondent respectfully submits with due deference that it is discretionary with him to enforce the law according to approved police methods and in accordance with the safety and welfare of the public. Your respondent feels that as Police Commissioner, it is within his power to determine whether or not a summary arrest should be made or whether the matter should be referred to the grand jury. Your respondent further maintains that in controlling a large police force and protecting the safety of a large city, he should be allowed, within the limits of the law, to determine how an offender should be arrested and when an offender should be arrested."

The answer does present a most unfortunate and much to be regretted condition of affairs in the City of Baltimore, if the Commissioner is correct. We are not now concerned with the question whether what is now section 436 of article 27 of the Code is a wise law, or one which ought to be continued in force, or whether baseball playing on Sunday by professional players should be permitted, but that section is a law of this State, and was not only in colonial days, having been passed in 1723, but it has been re-enacted as law by the Legislatures of Maryland twice since then, by the Code of 1860 and the Code of 1888, and has been continued in the present Code, the third volume of which contains this section, as well as the other statutes on Crimes and Punishments in this State, and it was enacted by the Legislature of this State as late as February 24th, 1914, that said Code "be and the same is hereby legalized and shall be deemed and taken in all the courts of the State, and by all the justices of the peace of the State, and by all public officials of the State, to be evidence of the Public General Laws of the State," contained in the Code of 1888 and statutes passed subsequent thereto. A similar provision was made as to the Code of

1904, prepared by the Honorable John Prentiss Poe. This statute cannot therefore be truly said to be merely a relic of colonial times, but it has been kept alive in the different codes just as any other statute which has been continued in force by them. Section 436 is just as much a binding law on the people of this State today as any other law in article 27 of the Code is, which deals with crimes and punishments. It is just as binding on a grand juror who has taken the comprehensive and solemn oath which grand jurors take, and on the petit jurors who under their oaths are bound to render their verdicts in criminal cases according to the law and evidence, as any other section of that article on crimes and punishments in force in this State.

Moreover, this particular statute has been the subject of litigation several times and has been invariably sustained as a valid law. We need only mention several decisions in reference to playing baseball on Sunday. In *Birnie's Case,* in the Circuit Court for Frederick County, quoted at some length in *Levering* v. *Park Comm'rs.,* 134 Md. 48, JUDGE McSHERRY held that, as the game of baseball was the occupation and employment of the parties then before him, the pursuit of that employment and occupation on Sunday constituted work within the meaning of this statute, and hence they were liable under it. It is true that his decision was in the circuit court, but his well known ability and care not to exceed his powers are sufficient to demand of everyone who knew him or knows of him as a judge, to respect his opinions. In *Levering* v. *Park Comm'rs., supra,* this Court, with the concurrence of every member of it, as late as February 13th, 1919, fully recognized the validity of the statute, and declared an ordinance void which would have permitted the playing of baseball on Sunday by professionals or others hired for the purpose, whose occupation and employment were the playing of such games, because it was in contravention of section 436. Other cases might be cited which reflect upon the question, but the above are sufficient to show not only that this law is in force, but that it prohibits such

games of baseball as are referred to in this case. Yet we are
told by the Police Commissioner of Baltimore in his answer
that "in order to make arrests at Oriole Park on a Sunday,
it would require the presence of about two hundred police-
men, and even with that large force there would be grave
danger of mob violence."

If such conditions exist in Baltimore City, they are cer-
tainly to be lamented by all law-abiding citizens, and some-
thing ought to be done to correct them. It is no excuse to say
that only those who are fanatical on the subject desire to
have it enforced, even if that be true, although in the answer
in this case the Police Commissioner has said under oath
that he, "believes in the observance of the Sunday laws and
that they should be enforced with all the vigor that the better
element of the community will support." Every one has a
right to his own opinion as to whether such a law as this is
a wise one, but no one has a right to violate it, or favor its
violation, as long as it is law, simpy because he is in favor of
Sunday baseball or other things prohibited by it. It may be
that those who are active in their opposition to Sunday base-
ball may, in their zeal, antagonize those who do not approve
of all of their methods, but, however that may be, that can-
not justify the violation of the law. If one set of people can
safely thus act, it will not be surprising if others follow
their example and violate other laws, the violation of which
may be of more serious consequences. There is a lawful way
of getting rid of a law, if the majority of the people do not
want it, but that does not justify either the majority or a
minority to violate it, as long as it is law, simply because it is
not in accord with their views or wishes.

But while we fully realize and appreciate the seriousness
of the situation, when we are informed by the Police Com-
missioner's answer, not only that the law had been openly
violated Sunday after Sunday, but that grand juries refused
to indict and the petit juries refused to convict, and find in the
brief of the appellants a statement that "whether the man-
damus prayed for by the appellants, the petitioners, in this

most grave and serious case shall go or be denied will decide
whether the State law preserving the Lord's Day shall be a
*living* or a *dead* enactment.   If the writ goes, the law shall
*live;* if it be denied, the law shall *perish* in Baltimore City,"
we must be governed by law in determining this case, as well
as all other cases.   Although the briefs before us furnish
evidence of great ability and industry, the real questions we
are called upon to decide are comparatively simple and, as
to some points, thoroughly established by our own decisions,
by which we must be bound, unless we do what we have
tried to show that others should not do—ignore the law of
the State.   If such unfortunate results follow our decision,
as stated in the appellants' brief, it is not the fault of this
Court, which must be controlled by its understanding of
the law.

Under our decisions, we might have disposed of this case in
a few pages, for if we reversed the order of the lower court,
how could a mandamus be of any avail?   Although the peti-
tion concludes with something in the nature of a prayer for
general relief, it was long since determined in this State
that "although compared to a bill in equity for specific per-
formance, it (mandamus) is a common law process, issued
for the special purpose indicated in the writ, and the relief
prayed is not modified according to circumstances, as under
the prayer for general relief, in a bill in equity" (*Booze* v.
*Humbird,* 27 Md. 1, 5), "a writ of *mandamus* must issue *as
prayed,* if it is issued at all." *Upshur* v. *Baltimore City,* 94
Md. 743, 760; *Wells* v. *Hyattsville,* 77 Md. 125, 142.   As
will be seen by referring to the prayers of the petition above
set out, the respondent could not now do what the petition
asks that he be required by mandamus to do, and the writ
would be nugatory if it was directed to be issued.   It has
been decided over and over again by this Court that the writ
will never be ordered where it will be nugatory.   *Booze* v.
*Humbird, supra; State ex rel. O'Neill* v. *Regester,* 59 Md.
283, 289; *Wells* v. *Hyattsville, supra; Summerson* v. *Schil-
ling,* 94 Md. 582, 589; *Same* v. *Same, Ibid.* 591, 606;

*Duvall* v. *Swann, Ibid,* 608, 616, and other cases to the same effect.

While what we have said is sufficient to show that we cannot direct the writ of mandamus to issue, and, if we did, it could be of no avail, as the games of baseball sought to be prevented were over before the case reached us, there are some other matters which are entitled to our consideration. There is no charge or suggestion that the Police Commissioner acted corruptly. There can be no doubt that he denied the material allegations in the petition, or that the demurrer to the answer admitted the facts which were well pleaded. Yet the case was disposed of in the lower court on that demurrer. The theory of the appellants seems to be that, notwithstanding the denials, the admissions the commissioner made in reference to referring the cases to the grand juries and their refusal to act were sufficient to show that he was in reality doing nothing which could be of avail towards preventing the violation of the law, and therefore the writ of mandamus should have been issued. But they disregard some matters which the court was called upon to take into consideration.

In the first place, there can be no doubt that the Police Commissioner has large discretion as to the best method to be pursued in order to stop the violation of law. If it be true that petit jurors will not convict in such cases, it might well be doubted whether it would be best to summarily arrest the parties and take them before justices of the peace, as they could give bail and eventually be entitled to trials before juries. There was at least enough in the answer to make it necessary for the court to have evidence before it in order to determine whether there were such facts existing as would justify issuing the mandamus. As the demurrer admitted the facts in the answer which were well pleaded, and practically every allegation in the petition was denied, it would seem that the porper course for the appellants to have pursued was to have filed a replication and introduced evidence. It is true that even if an officer has discretion in the per-

formance of his duties he cannot simply fold his hands and refuse to do anything. As CHIEF JUDGE McSHERRY said, in *Manger v. Board of Examiners,* 90 Md. 659, 671: "The exercise of a discretion, though erroneously, if not corruptly exercised, cannot be reviewed in a petition for a mandamus, but an officer clothed with a power to act may be compelled by mandamus to exercise that power, though his honest discretion in the exercise of it cannot be controlled." As the commissioner is not charged with acting corruptly, even though he did erroneously, the court could not use the writ of mandamus to require him to exercise his powers, either as the appellants or the court thought was the proper method, if he in point of fact was doing what he believed was best to be done under all the circumstances. As there was enough in his answer to require the appellants to reply to it, when they refused to do so, there was nothing for the court to do except what it did.

We do not mean that, if the appellants had shown by evidence or by admissions in the answer, that the course pursued by the commissioner was entirely futile, and known by him to be so, and that there were other methods which, if adopted, could be made effectual, the commissioner could excuse himself simply by saying he would continue to endeavor to enforce the Sunday law by efforts he knew to be useless and futile, but the court ought to have been thoroughly satisfied that the grand juries would continue to refuse to indict violators of a statute which had been declared to be valid by the highest court in the State, before it could have determined that the commissioner was adopting a method which he knew, or ought to have known, would be of no possible avail.

It cannot be assumed that every grand jury before which such cases are brought will refuse to indict because several of them have done so. Nothing was said at the argument, or in the briefs, to the effect that a grand jury in Baltimore did not have the power to indict for violation of this statute, and hence we have not felt called upon to make any special

investigation into that question. It is probably done under sec. 444 of art. 4 of the Public Local Laws (Act of 1880, chap. 211), as it provides that "when any fine or penalty is imposed by any Act of Assembly of the state * * * for doing of any act forbidden to be done * * * or for omitting to do any act required to be done * * *, the doing of such act, or the omission to do such act, shall be deemed to be a criminal offense; such offense, in the City of Baltimore, shall be prosecuted by the arrest of the offender for such offense and by holding him to appear in or committing him for trial in the Criminal Court of Baltimore, at the Saturday sessions of said court * * *, or said offense may be prosecuted by indictment in such court," etc. If we are right in supposing that that is probably the statute under which indictments for such offenses are found, it does not seem to be entirely clear why the method by indictment is adopted, but there may be some good reason which does not occur to us, but is known to a judge who is a member of the Supreme Bench of Baltimore City, and sits in the different courts of that city. A judge of that bench, who has experience in the criminal court, as they all have from time to time, would certainly be more competent to judge of the best and most effective methods to adopt in that court than those who have no such experience, or they may differ as to that, but they certainly know better than the petitioners did. Those engaged in some particular lines of work in helping to suppress vice and prevent violations of the law are very apt to have their own ideas of the best methods to be pursued, and they are not always right in regard to them.

But it would seem to be clear that when, as in this case, the whole ground for the claim of the right to have a mandamus issue is that the Police Commissioner not only did not adopt the method the plaintiffs insist upon, which they say is the best method, but did adopt another method which, although authorized by law, has thus far proven ineffective, although not because the Commissioner did not do all he could to make his method effective, but because another de-

partment of the law did not do its part, the plaintiffs' case is not made out. It may be that a firm and decided stand taken by the Commissioner might be productive of more good results than what has been done—that is to say—if he positively and emphatically notified the people who had charge of Sunday baseball that the games of which he has notice must not be played, as there is a law prohibiting them, and if they then persisted in doing so, he took active steps to prevent them, not by arresting them for what they had already done, but by preventing them from having the games, even if it did take two hundred policemen to do so, and there was danger of mob violence, as the answer says. A firm resistance of such a mob, and such adequate punishment for riot or similar offenses as the law provides, would not have to be repeated often to let people know that such violations of law would not be permitted in Baltimore. That might be a more effective way than the Commissioner adopted, but if he was honest in what he did, and the way he adopted was one of those authorized, it would seem to be clear that under our decisions the court could not compel him to adopt the other way, by a writ of mandamus, unless it was certain that his method was and would be futile, and in order to show that such was the case there ought to have been something more than argument—there should have been proof.

In the case of *Upshur* v. *Baltimore City,* 94 Md. 743, 760, it was said that "the writ must not only serve some just and useful purpose, but it must be necessary to secure the ends of justice." There the statute required the Police Board to detail from time to time policemen for service in the parks of the city. The Board of Park Commissioners applied for a mandamus to require the Police Board to furnish a number of policemen, and averred that they were unable to properly preserve order and protect the property of the city within the parks and public squares of the city because of the failure and refusal of the Police Commissioners to comply with the request of the Park Commissioners. The answer of the Police Commissioners denied the averments of the petition. The Court said: "If, in fact, there was no

necessity, or what is the same thing, if it did not appear that there was a necessity for that number of men, no just or useful end could have been subserved and the ends of justice could not have been promoted by ordering the Police Commissioners to furnish them." The Court then went on to say: "How could the trial court assume that the necessity existed in the teeth of the flat denial made in the answer? And yet, before the writ could issue, the existence of the necessity must have been assumed, inasmuch as there was no evidence adduced to establish it. This Court must make the same assumption before the order appealed against can be affirmed." This Court reversed an order which had directed the mandamus to issue.

But it is not necessary to prolong this opinion by quoting from the numerous decisions in this State and elsewhere to show that, when an officer of the law has discretion vested in him as to certain acts and the method of performing them, the court will not generally, by mandamus, require him to perform them in any particular way, if it is satisfied that he acted honestly and within what the law left to his discretion, or that when the respondent has denied the material allegations of the petition, and it is left uncertain as to what method was best to be pursued, mandamus will not lie.

Both sides have shown commendable zeal and industry in citing authorities as to when the courts will, or will not compel officers to enforce laws. While we do not agree with either side, that when properly considered they are practically unanimous, each side claiming that the unanimity is on that side, none of them convince us that the appellants were entitled to the writ of mandamus under the facts and circumstances set out in this record.

We will affirm the order appealed from, as that is the practice adopted by this Court, even in cases where the writ is denied wholly or in part because it is too late to direct a mandamus to issue.

*Order affirmed, the appellants to pay the costs,*
*above and below.*