WILLIAM A. PARR, Buildings Engineer, et al. *v.*
CHARLES P. SEVERSON.
[No. 92, October Term, 1935.]

*Decided January 16th, 1936.*

The cause was argued before Bond, C. J., Urner,
Offutt, Parke, Mitchell, Shehan, and Johnson. JJ.

*Allen A. Davis, Assistant City Solicitor,* with whom was *R. E. Lee Marshall, City Solicitor,* on the brief, for the appellants.

*O. Bowie Duckett, Jr.,* and *Hall Hammond,* with whom were *Hargest, LeViness, Duckett & McGlannan* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

By a writ of mandamus, the buildings engineer and the city service commission of Baltimore City have been commanded to reinstate in the classified city service Charles P. Severson, petitioner for the writ, who had been discharged, and to re-enter his name on the official roster of employment in the proper order of his seniority; and the appeal is from that order. In the trial court, the hearing on the petition was had before the judge sitting without a jury. *Strott v. Broening,* 160 Md. 560, 570, 154 A. 45; *University of Maryland v. Murray,* 169 Md. 478, 182 A. 590.

The petitioner had been employed since 1924 as a building inspector. Whatever his conduct and the character of his work in the earlier years of his employment, later, under the respondent Parr, the buildings engineer and head of the department, who took office in 1931, he appeared neglectful of his work, untruthful in his reports of work done, and antagonistic to his superior. His duties required him to visit a number of buildings in a prescribed district of the city each day. But early in 1932 he was discovered to be reporting as many as thirty-four visits on days on which he had made one or none at all. He disregarded an order to discontinue unnecessary use of a city automobile for the sake of economy, telling his superior that he understood his business and would work his district as he liked. Ordered to assist the head of the bureau of minor privileges, he put off particular orders from that official and gave no co-operation. And he speaks in his testimony of having to "call down" his superior for speaking to him too loud and roughly.

These illustrations of conduct and attitude, together with those of later utterances, show in our opinion the existence of ground for concluding that the habitual command and obedience required for efficiency in the employment was not to be looked for with relation to the petitioner, that proper performance of his duties could not be expected, and that his retention in the employment was contrary to the good of the city government.

On April 2nd, 1932, he was discharged by Parr. The trial court expressed the opinion that there was ample ground for the discharge. We find that Severson then applied to the Mayor, an acquaintance of many years, and the Mayor arranged a conference at which, besides himself, Parr, Severson, and the chief engineer, Bernard L. Crozier, were present. On learning that Severson would reach sixty years of age on February 21st, 1933, at which age a city employee is entitled to retire on a retirement allowance, the Mayor suggested that Parr reinstate Severson, but the latter declined to do so under any circumstances, characterizing the petitioner as incompetent and inefficient and a disorganizer. The three officials then arranged that Parr should alter the discharge of Severson to a suspension of thirty days, and that the chief engineer, Mr. Crozier, should provide employment in another department until the petitioner should reach full sixty years. The arrangement was explained to Severson, and he acquiesced in it. It was carried out by a suspension and his temporary transfer to another department.

On November 22nd, 1932, his retiremment was recommended by a personnel survey commission appointed to relieve the city department of inefficient men, but, as he was not eligible for retirement until three months later, he asked the Mayor to try to find a way to keep him on until March 1st, 1933. Parr by letter of January 30th, 1933, notified Severson that he had been retired, the retirement to become effective on February 1st. But on the next day the petitioner again asked the Mayor's intercession. "I don't feel," he wrote, "that you wish to put

one off without a pension, that you have professed such a friendship for * * *. If you can arrange to allow me the thirty days sick leave and the two weeks vacation, that I would be entitled to for the year, then if you wish, I will at the end of this period, resign my position." This was arranged by the Mayor.

On February 11th, the city service commission, in reply to an application of the petitioner's that his difficulties be investigated, wrote him that they had been informed by Parr that he had notified the petitioner to ask for retirement, and that proof of Severson's age would be required, adding that he could not be retired without his consent on March 1st, if he was not then seventy years of age, but that he had the option of retiring at sixty years or later. Severson then declined to retire, and, when again urged to apply for retirement, answered Parr, according to the weight of the evidence, that he knew what his rights were, and he wonld do as he damned pleased, and walked out slamming the door as he went. Parr then notified him that he was dismissed from the service for insubordination and inefficiency.

Severson applied to the city service commission for an investigation of the discharge. That commission, under section 203-C and 203-L of the City Charter, has power to investigate a discharge from the classified city service, and to report to the Mayor for his action upon finding that the discharge has been for any reason other than the good of the public service, on account of the employee's political or religious opinions or affiliations, refusal to contribute to any political fund, or refusing to render any political service, or otherwise. And after a hearing the commission found and reported that the petitioner had not been discharged contrary to the provisions of section 203-L.

Importance is attached to an explanation by Parr, while a witness in court, that he discharged Severson for the insubordination and the way he acted in the department on the morning of the final discharge, and that Parr, in his own words, "dismissed him not on any other

charges—the previous charges had all been water over the dam with me." This the trial court interpreted as a condonation of previous grounds of discharge, with the result that they were removed from present consideration. That meaning is not clear, in view of the fact that, at the time, Parr had told Severson he was discharged for insubordination and inefficiency, and, in view of the witness' repetition, in answers to the next few questions, that the petitioner had the whole department disorganized and upset, and, somewhat later still in the testimony, that Severson was dismissed for incompetency together with insubordination. Parr illustrated the incompetency by referring to past experience with Severson. A second statement of the reason for the final discharge, in testimony after that quoted, was: "I had no charges to prefer against him at that time, up until then." And this must be interpreted in the light of the fact that Severson had given reason for his discharge previously, and Parr had in fact discharged him, and refused to have him in his department under any circumstances. The whole testimony of the witness leads this court to infer that Parr's meaning was that he was content to co-operate in the retirement of Severson, notwithstanding the previous merited discharge, until the accurrence in the office which led to the second discharge. This interpretation prevents an inference of condonation, if condonation were possible. A question whether such a statement by a public officer could, under the circumstances narrated, prevent action by the city to remove an incompetent employee from its rolls, may be passed as unnecessary to the decision.

The failure to let the discharge, for the previous acts and omissions testified to, stand, and the substitution of the suspension in place of it, could not affect the right to discharge even by a private employer, for the cause of discharge would be not an isolated act, but characteristic, continuing shortcomings in the employee. Iudulgence to such an employee does not interfere with subsequent discharge, at least upon failure to gain a desired improvement by the indulgence. And Severson's attitude on the

final morning, when repudiating the arrangement for his retirement, afforded reason for concluding that there was no change in his shortcomings. Notes, with reviews of decisions: 19 *Ann. Cas.* 878; 8 *L.R.A. (N.S.)* 1004; 1 *Labbatt, Master & Servant* (2nd Ed.) 190, 191. And see *Woods v. Simpson,* 146 Md. 547, 551, 126 A. 882. It appears, moreover, that the discharge on April 2nd, 1932, was rescinded only for the purpose of enabling the petitioner to continue in the employ of the city until he could retire with a pension, and he could not rely upon condonation or waiver at that time while defeating the purpose of it, as he did by declining to retire when the time came.

The conclusion that Parr, on that morning, had ground for finding that the discharge of the petitioner was for the good of the public service, renders it unnecessary to consider further questions. The buildings engineer is not limited in his power to discharge, except that a discharge must be on the ground of the good of the public service, and not on that of the employee's political or religious opinions or affiliations, refusal to contribute to political funds, or to render political service. And no tribunal is charged with the duty, or invested with the power, to review discharges ordered by him in the exercise of his discretion for the public good. The action is within a discretion vested in him alone. "The exercise of a discretion, though erroneously, if not corruptly exercised, cannot be reviewed on a petition for a mandamus." *Manger v. Board of State Medical Examiners,* 90 Md. 659, 671, 45 A. 891, 894; *Graham v. Gaither,* 140 Md. 330, 349, 117 A. 858; *Woods v. Simpson,* 146 Md. 547, 551, 126 A. 882.

*Order reversed, and petition dismissed with costs.*