## DIRECTOR OF FINANCE FOR THE CITY OF BALTIMORE ET AL. *v.* RICHTER

[No. 74, September Term, 1973.]

*Decided November 7, 1973.*

*Motion for rehearing filed December 4, 1973; denied December 5, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*William Hughes, Assistant City Solicitor,* with whom was *George L. Russell, Jr., City Solicitor,* on the brief, for appellants.

*Leonard A. Orman* for appellee.

SMITH, J., delivered the opinion of the Court.

We shall here reverse the order of a judge in the Superior Court of Baltimore City who directed issuance of the writ of mandamus to compel reinstatement of appellee, Michael A. Richter, Jr. (Richter), "as a Senior Buyer for the City of Baltimore, and that he be compensated for monies lost by reason of his dismissal . . . ."

The Chief of the Bureau of Purchases of Baltimore City, with the approval of the Director of Finance, discharged Richter effective July 31, 1969. The letter of dismissal issued on July 29 advised Richter that his employment was being terminated because he had "violated official regulations which resulted in loss or injury to the City and the public." Through the Baltimore City Civil Service Commission, he requested a full statement of the particulars or specifications assigned as reason for the termination. On August 14 he was advised pursuant to that request that although he was present at a meeting on July 24 attended by the City Solicitor, the City Comptroller, the City Auditor, and the Director of the Department of Finance at which he was "informed in detail of the facts uncovered in the

departmental audit which led to [his] dismissal," the City Purchasing Agent would be "happy to comply with the directive of the Civil Service Commission." There then was set forth an itemization involving improper attachment of bids, acceptance of "late" bids, failure to award to "low" bidder, bids not "clocked in," switching of awards, awards to high bidder, favoritism in awarding, splitting of awards, purchases made without use of bids, falsifying purchases to informal bids, and awarding to nonbidders. He was informed that "[t]hese [were] the incidents which [had] been brought to [the] attention [of the City Purchasing Agent and the Director of Finance] as of [that] date."

The matter ultimately came on for hearing before the Civil Service Commission (the Commission). The City produced one witness, the City Auditor. He testified in substantial detail relative to purchases made by Richter which the auditor regarded as violations of the city charter. Richter's defense consisted of a denial of certain allegations, a contention that yet other actions did not violate established procedures, that some actions were at the direction of his superiors, and that Richter was a person of honesty and integrity.

In its opinion the Commission said, in part:

"A proper decision by the Commission on the facts of this case requires an examination of the Commission's power to act in cases of discharge of employees. The Charter, Section 118, expressly forbids the discharge of one in the Classified Civil Service by reason of employee's political opinions or affiliations, or refusing to contribute to any political fund or render any political service. There is no suggestion that these express prohibitions are in any way involved in this case.

"*The Charter continues,* in the same Section, to provide *that nothing in the Charter 'shall forbid the removal [or] dismissal . . . of any . . . employee for any cause, other than those hereinbefore enumerated, which, in the opinion of the person*

*authorized by law to remove or dismiss such ... employee, may interfere with the efficient discharge of the duties of the position.' ... In investigating a removal, the Commission seeks to ascertain whether the removal was based upon one of the proscribed bases, which is not the case here, or was for 'reasons other than the good of the service....'*

"The Charter does not accord to the Commission the power to reinstate employees dismissed nor is the Commission authorized to second guess the opinion of the person authorized by law to dismiss the employee.

*"The inquiry before the Commission is whether or not there are facts in the record upon which the person authorized by law to dismiss Mr. Richter could have concluded that his conduct might interfere with the efficient discharge of his duties.*

"We are unable to say on the record before us that there are insufficient facts for the person authorized to dismiss Mr. Richter upon which to base an opinion that his conduct might interfere with the efficient discharge of the duties of the position of a Senior Buyer.

"The explanation and evidence produced by the employee may point to a lack of moral culpability on the part of Mr. Richter, but the Commission cannot say that deference to a strong-willed supervisor or to a demanding Department Head of a Department using a product necessarily demonstrates that the removal of a Buyer is based on a cause other than the good of the Service.

"In the opinion of the Commission, the evidence adduced and the answers given to the charges leave the record in such a state that it must concur in the dismissal of the employee. It is further the opinion of the Commission, however, that Mr. Richter, under all the circumstances, has not been guilty of

such conduct as would render him unacceptable for employment in the Classified Civil Service." (Emphasis added.)

The trial judge found "that the dismissal of [Richter] was without good cause and that the action of the Civil Service Commission in affirming said dismissal was arbitrary, capricious and without legal justification." In so finding, he said in part:

"It would appear that the Commission approached its review in a negative frame of mind.

"Their inquiry should have been whether or not there were sufficient facts proven as to misconduct on the part of the employee which would be a valid basis for his discharge. Rather, they apparently felt that where the facts were insufficient to show that the discharge was unwarranted, then they should not 'second guess' the dismissal."

It is apparent that the trial judge misunderstood the function of the Commission under the Baltimore City Charter and the bases upon which an employee of the City in the classified service may be removed. In *Parr v. Severson*, 169 Md. 647, 182 A. 595 (1936), the Court had before it a case arising under virtually identical provisions of the then city charter. What Chief Judge Bond said there for the Court is relevant and controlling here. He said:

"The buildings engineer is not limited in his power to discharge, except that a discharge must be on the ground of the good of the public service, and not on that of the employee's political or religious opinions or affiliations, refusal to contribute to political funds, or to render political service. And no tribunal is charged with the duty, or invested with the power, to review discharges ordered by him in the exercise of his discretion for the public good. The action is within a discretion vested in him alone. *The exercise of a discretion, though erroneously, if not corruptly exercised, cannot be*

> *reviewed on a petition for a mandamus.' Manger v.*
> *Board of State Medical Examiners,* 90 Md. 659, 671,
> 45 A. 891, 894; *Graham v. Gaither,* 140 Md. 330, 349,
> 117 A. 858; *Woods v. Simpson,* 146 Md. 547, 551, 126
> A. 882." *Id.* at 652. (Emphasis added.)

The Commission has correctly summarized the pertinent provisions of the Baltimore City Charter relative to dismissal of an employee from the classified service and the Commission's function in investigating that dismissal. There was not even a scintilla of evidence indicating that Richter was discharged for a reason proscribed by the city charter or that his superiors were in any way corrupt in exercising the discretion lodged in them. There was substantial evidence before the Commission to support a finding that the reason for Richter's removal was for the good of the service. Therefore, the trial judge erred in directing reinstatement of the employee.

> *Order reversed and petition dismissed; appellee to pay the costs.*