Cynthia B. MONDELL
v.
MAYOR AND CITY COUNCIL OF BALTIMORE, etc., et al.
Civ. No. 71-977-K.

United States District Court,
D. Maryland.
June 25, 1974.

Harold Buchman, Baltimore, Md., for plaintiff.

George L. Russell, Jr., City Sol., for Baltimore City, William Hughes, Asst. City Sol., Baltimore, Md., for defendants.

FRANK A. KAUFMAN, District Judge.

In an earlier opinion in this case,[1] this Court held that the plaintiff was entitled to an administrative hearing with regard to her allegation of unlawful discharge on January 15, 1971 from her position in the Baltimore City Planning Department and her quest for reinstatement, back pay and damages from the date of her discharge to the date of her reinstatement. On September 23, 1973 an evidentiary hearing was held before a Hearing Officer of Baltimore's Civil Service Commission. During that hearing plaintiff was represented by counsel and afforded full procedural due process rights including the right of confrontation. The Hearing Officer found that there was sufficient evidence to justify the termination of plaintiff's employment and accordingly recommended that plaintiff's termination be upheld. On November 12, 1973, the Civil Service Commission concurred in that recommendation. Thereafter, the parties requested this Court, sitting as a non-jury judge, to make a *de novo* factual determination[2] on the basis of the transcript of the testimony before the Hearing Officer and of the deposition testimony of plaintiff given before this

---

1. 356 F.Supp. 76 (D.Md.1973).

2. Plaintiff would appear entitled to a *de novo* determination by this Court by the implications of the discussion in Perry v. Sindermann, 408 U.S. 593, 598, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), with regard to the factual disputes relating to her First Amendment claim.

Court filed its earlier opinion, without any further evidence being taken in the post-administrative context of this case. So doing, this Court finds, as did the Hearing Officer, that plaintiff was discharged "because of unwarranted absences from her desk and a conscious (perhaps willful?) disregard of checking in and checking out requirements" and because of her "antagonistic attitude toward supervision".[3] Indeed, this Court not only finds, as did the Hearing Officer, that there was sufficient evidence to support plaintiff's job termination, but concludes that plaintiff's attitude and job performance were of such low grade that her superiors could well have subjected themselves to serious criticism as to performance of their assigned duties if plaintiff's employment had not been terminated.

■ Under the Baltimore City Charter, an employee of the City of Baltimore may be discharged from his job provided that discharge is "for the good of the public service." Parr v. Severson, 169 Md. 647, 652, 182 A. 595, 597 (1936), cited, discussed and followed in Director of Finance v. Richter, 270 Md. 226, 310 A.2d 788 (1973). As in *Richter*, there is not in this case "even a scintilla of evidence indicating that [plaintiff] was discharged for a reason proscribed by the city charter or that [plaintiff's] superiors were in any way corrupt [or arbitrary] in exercising the discretion lodged in them" or that there was lacking "substantial evidence * * * to support a finding [by the Hearing Officer, the Civil Service Commission and *de novo* by this Court] that the reason for [plaintiff's] removal was for the good of the service." *Id.* at 231, 310 A.2d at 791. Accordingly, under applicable statutory and common law principles embodied in the law of the State of Maryland, there is no basis upon which this Court can or should require plaintiff's reinstatement to her position.[4]

■ This Court accordingly concludes that plaintiff was not discharged because of any exercise of her First Amendment or any other substantive rights. However, plaintiff is "a person who had 'a clearly implied promise of continued employment'" under Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).[5] Therefore she possessed a "property interest" which could constitutionally be terminated only if she is afforded a hearing which comports with due process requirements. Arnett v. Kennedy, 416 U.S. 134, 151, 94 S.Ct. 1633, 40 L. Ed.2d 15 (1974). It was such a hearing which this Court required pursuant to its earlier opinion. That hearing has now been held. Plaintiff, however, contends that even if she was not unlawfully fired and is thus not entitled to reinstatement or to damages for unlawful discharge, she nevertheless must be awarded back pay between the date of her discharge on January 15, 1971 and November 12, 1973, the date the Hearing Officer filed his opinion, because even if there existed on January 15, 1971 a sufficient factual basis for her lawful discharge, plaintiff was unlawfully discharged on that date because she was not given the opportunity to have a pretermination hearing. The fact that plaintiff was not given a hearing until this Court so ordered would not entitle her to back pay unless plaintiff was entitled either to a pretermination hearing or at least to suspension and pay between a date of conditional discharge and the date of such a hearing.

On April 16, 1974, the Supreme Court, in five separate opinions filed in Arnett v. Kennedy, *supra,* established principles which if they do not specifically control the resolution of plaintiff's quest for

---

3. Opinion of Hearing Officer Leon Sachs filed November 6, 1973, pp. 9–10.

4. *See,* as to federal employment, Pidgeon v. United States, 490 F.2d 1407 (4th Cir.

1974); Halsey v. Nitze, 390 F.2d 142, 144 (4th Cir. 1968).

5. Quoted at 356 F.Supp. *supra* at 77.

back pay, nevertheless guide this Court and require the rejection of that quest. In , *Arnett*, the plaintiff, an employee of the Federal Office of Economic Opportunity (OEO), was discharged for recklessly asserting that federal officials who were his superiors "had attempted to bribe a representative of a community action organization with whom the OEO had dealings." 416 U.S. at 137, 94 S.Ct. at 1636, 40 L.Ed.2d at 24, *supra.* Writing for himself, the Chief Justice and Mr. Justice Stewart, Mr. Justice Rehnquist, in the plurality opinion, held that a federal employee who enjoyed property rights in his federal job pursuant to *Roth* and Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), could be first discharged, as permitted by the applicable federal statute, and then granted a post-termination hearing *"after* the actual dismissal". 416 U.S. at 157, 94 S.Ct. at 1646, 40 L. Ed.2d at 35, *supra* (emphasis supplied) ; and that the Federal Constitution does not require more. Thus, he concluded in the plurality opinion that the procedural protections to which the plaintiff had to look with regard to his employment rights devolved solely from the applicable federal statute.

Concurring specially and joined by Mr. Justice Blackmun, Mr. Justice Powell indicated that in his view the plurality opinion wrongfully concluded that "the statute governing federal employment determines not only the nature of appellee's property interest, but also the extent of the procedural protections to which he may lay claim." 416 U.S. at 166, 94 S.Ct. at 1650, 40 L.Ed.2d at 40, *supra.* Accordingly, Mr. Justice Powell and all of the Justices other than the Chief Justice and Justices Rehnquist and Stewart, found themselves in agree-ment concerning what Mr. Justice White in his separate dissenting opinion, described as "this fundamental proposition", namely, that "[w]hile the State may define what is and what is not property, once having defined those rights the Constitution defines due process" and thus "the nature of the procedures required" with regard to termination of a property right. Mr. Justice Powell specifically noted that "six members of the Court are in agreement" with regard thereto. 416 U.S. at 185, 94 S.Ct. at 1660, 40 L.Ed.2d at 51, *supra. See also* Mr. Justice Marshall's statement (at 416 U.S. at, 211, 94 S.Ct. at 1672, 40 L.Ed.2d at 66, *supra*) that "a majority of the Court rejects Mr. Justice Rehnquist's" contrary view.

What divided Mr. Justice Powell, joined by Mr. Justice Blackmun on the one hand, and Justices Douglas, Brennan, Marshall and White on the other hand, was whether the due process hearing, which all six of them agreed was constitutionally mandated,[6] had to be held *"before* removal".[7] Engaging in what he described as a balancing process in which "the Government's interest in expeditious removal of an unsatisfactory employee is weighed against the interest of the affected employee in continued public employment", Mr. Justice Powell (at 416 U.S. at 167, 94 S.Ct. at 1651, 40 L.Ed.2d at 41, *supra*) stressed the "Government's interest, and hence the public's interest, is the maintenance of employee efficiency and discipline"; and the need of the "Government, as an employer" to "have wide discretion and control over the management of its personnel and internal affairs", and "to remove employees whose conduct hinders efficient operation and to do so with dispatch". Specifically rejecting (in n.4 to

---

6. But see this paragraph in Mr. Justice White's dissent (416 U.S. at 186, 94 S.Ct. at 1660, 40 L.Ed.2d at 51, *supra*) :

A different case might be put, of course, if the termination were for reasons of pure inefficiency, assuming such a general reason could be given, in which case it would be at least arguable that a hearing would serve no useful purpose and that judgments of this kind are best left to the discretion of administrative officials. This is not such a case, however, since Kennedy was terminated on specific charges of misconduct.

7. Mr. Justice Powell concurring, 416 U.S. at 167, 94 S.Ct. at 1651, 40 L.Ed.2d at 41, *supra.*

his opinion) Mr. Justice White's view as to suspension with pay, Mr. Justice Powell wrote (416 U.S. 169, 94 S.Ct. at 1651, 40 L.Ed.2d at 41, *supra*) that—

. . . suspension with pay would obviate any problem posed by prolonged retention of a disruptive or unsatisfactory employee. Aside from the additional financial burden which would be imposed on the Government, this procedure would undoubtedly inhibit warranted discharges and weaken significantly the deterrent effect of immediate removal. In addition, it would create a strong incentive for the suspended employee to attempt to delay final resolution of the issues surrounding his discharge.[8]

In his dissenting opinion Mr. Justice White (416 U.S. at 186, 94 S.Ct. at 1663, 40 L.Ed.2d at 56, *supra*) indicated his view that when a public employee who had a *Sindermann-Roth* "property interest" is discharged before a "pretermination hearing", which he concluded, in disagreement with Justices Douglas, Marshall and Brennan, need not always be a full evidentiary hearing with complete rights of confrontation, such employee should be granted suspension with pay.

Notwithstanding the divergent views of the members of the Supreme Court in *Arnett*, what emerges clearly is that in that case the majority of the Court rejected the position of Justices Brennan, Douglas and Marshall that a hearing must be held before discharge, and also rejected Mr. Justice White's position that an employee is entitled to suspension with pay until a hearing is held. Accordingly, Mondell had no right to a pretermination hearing. Accord-

ingly also, Mondell is not entitled to any damages because she was not afforded a pretermination hearing.[9] Further, since Mondell was neither entitled to remain in her employment until the hearing nor to pay until any hearing was held, it follows that back pay would not be an injury caused by any denial of a hearing. But nonetheless plaintiff contends that because she did not receive any hearing until this Court required the same to be held, she is in a different position with regard to her claim to back pay than was the employee Kennedy in *Arnett*. In that case a post-termination hearing procedure, which, as indicated *supra*, five Justices of the Supreme Court held not constitutionally defective, was available to, but not utilized by, Kennedy, without the delay which Mondell encountered before she was granted a hearing.

In Smith v. Hampton Training School (4 Cir. 1966), 360 F.2d 577, 581 n.8, Judge Sobeloff characterized "back pay" as not "damages" but rather as "an integral part of the equitable remedy of reinstatement". Herein, plaintiff, who was discharged on January 15, 1971, did not institute this case in this Court until September 9, 1971. Since that date, the record discloses that such delays as have occurred cannot be charged to the defendants or to other city officials. On balance, there are no compelling equities which would appear to require, as a matter of constitutional entitlement, the award of back pay to an employee who in this Court's judgment was rightfully discharged, simply because she was, pursuant to legal principles later established by the Supreme Court in *Roth* and *Sindermann*, not given an administrative hearing until after she successfully ob-

---

8. 416 U.S. at 169, 94 S.Ct. at 1651, 40 L.Ed. 2d at 41, *supra*.

9. The record discloses some confusion as to Mondell's status and rights under the Baltimore City Charter. *See, e. g.*, 356 F.Supp. *supra* at 77 n. 2. Additionally, it is to be noted that *Sindermann* and *Roth* were not decided until June 29, 1972, well after plaintiff's discharge on January 15, 1971. Further, the record leads this Court to conclude

without hesitation that each of the defendants herein acted in connection with plaintiff's discharge in accordance with their respective good faith understandings of the law as it existed in 1971. Under such circumstances, the plaintiff herein is not only not entitled to the award of the punitive damages she seeks, but is not entitled to any compensatory damages. Pierson v. Ray, 386 U.S. 547, 557, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

tained the same by resort to this Court. While it might be argued that plaintiff is entitled to damages because she was not given an administrative hearing until after resort to this Court and thus may have incurred damages while in a state of limbo for longer than should have been the case, the good faith defense to which the defendants herein are entitled bars any such award.[10]

For the reasons set forth in this opinion, judgment will be entered for defendants.