**Kenneth R. DAVIS, Plaintiff-Appellant,**

v.

**S. Ernest VANDIVER, William H. Kelly and Paul E. Innecken, Defendants-Appellees.**

**No. 73–1481.**

United States Court of Appeals, Fifth Circuit.

May 28, 1974.

William R. King, Theodore G. Frankel, Atlanta, Ga., for plaintiff-appellant.

William Kanter, Walter H. Fleischer, Appellate Section, Civil Div., Dept. of Justice, Washington, D. C., John W. Stokes, Jr., U. S. Atty., Beverly Bates, Asst. U. S. Atty., Atlanta, Ga., Eloise E. Davies, Dept. of Justice, Appellate Section, Washington, D. C., for defendants-appellees.

Before BELL, DYER and CLARK, Circuit Judges.

DYER, Circuit Judge:

Davis appeals from the district court's judgment of dismissal based upon a determination that no due process violations infected the proceedings by which he was discharged in 1971 from his position as an Air National Guard technician. We have awaited the Supreme Court's decision in Arnett v. Kennedy, 1974, —— U.S. ——, 94 S.Ct. 1633, 40 L. Ed.2d 15 before addressing Davis' contentions, and with the guidance of that decision, we affirm the judgment below.

A professional aviator, Davis had served as a flight training instructor for the Air National Guard technician detachment in Savannah, Georgia for ten years prior to the events leading to his discharge. During August, 1971, while operating a Government vehicle off base without authority and for his personal convenience, Davis was involved in a hit-and-run accident resulting in property damage. Following an investigation by Savannah police which brought local authorities onto the National Guard base, Davis, after some delay, admitted responsibility for the accident. Two weeks later, the detachment commander formally advised Davis that he proposed to remove Davis from employment no earlier than thirty days from the notice date. Consistent with applicable National Guard regulations, this notification contained a statement of the charges and reasons for removal, indicated that Davis enjoyed a right to reply orally or in writing to the charges, and stated that after receipt of any response from Davis a written decision would be forthcoming. Davis availed himself of his right to reply, albeit under protest that the State Adjutant General, not the unit detachment commander, was the only individual authorized to act upon termination matters. Despite Davis' attempted explanation of his behavior, he was discharged from his post in September, 1971, pursuant to a notice signed by the detachment's personnel officer acting on behalf of the Adjutant General. He was subsequently afforded a full evidentiary hearing *after* his termination, but the dismissal was upheld as proper by the hearing examiner.

Before addressing Davis' due process contentions, we note preliminarily his two subsidiary arguments that controlling Air National Guard regulations were either substantively inadequate or unfaithfully adhered to in effecting his termination. Davis argues first that the regulations failed to provide ample notice of proscribed conduct, and secondly, that only the Adjutant General was empowered to act on Davis' discharge in view of statutory language vesting employment decision-making power in that person. 32 U.S.C.A. § 709(e)(3), (4). As to the first argument, Davis was adequately apprised of the fact that his misconduct off base could result in dismissal from employment by generally applicable Air National Guard Regulations, including § 7–37 (Table, Offense 13), which provides that misconduct by technicians off duty, if sufficiently serious, may be punished by dismissal even for a first offense. Davis impliedly demands a highly detailed catalog of offenses clearly setting forth each imaginable species of malfeasance which could result in substantial discipline. The short answer to this contention was well expressed by the District of Columbia Circuit: "[I]t is not feasible or necessary for the Government to spell out in detail all that conduct which will result in retaliation. The most conscientious of codes that define prohibited conduct of employees includes 'catch-all' clauses. . . ." Meehan v. Macy, 1968, 129 U.S.App.D.C. 217, 392 F.2d 822, 835, modified 138 U.S.App.D.C. 38, 425 F.2d 469, *quoted in* Arnett v. Kennedy, *supra,* at 1648.

■ Davis' second contention with respect to the official statutorily empowered to act in employment matters is without foundation. The principal purpose of the National Guard Technician Act of 1968, 32 U.S.C.A. § 709, was to create a bifurcated nature of technician employment—to confer *federal* status on civilian technicians while granting administrative authority to *State* officials, headed in each State by the Adjutant General. 1968 U.S.Code Cong. & Admin.News, pp. 3319–3321. Nothing in the Act or legislative history pertaining to the vesting of managerial decisions in State officials supports Davis' extraordinary contention that all employment decisions must be made personally by the State's Adjutant General, thereby precluding delegation of such authority.

Davis' principal attack on his dismissal, however, is mustered against what he perceives as procedural infirmities violative of constitutional requisites. Essentially, Davis argues that in view of the serious deprivation visited on him by official action, a formal pre-termination hearing is constitutionally demanded by the Due Process Clause. Secondly, Davis suggests that regardless of the constitutional adequacy of procedures afforded him, no impartial determination was made in meting out the sanction of dismissal. The answer to both arguments is contained in *Arnett*.

Squarely presenting the issue of due process requirements surrounding the discharge of a nonprobationary federal employee pursuant to the provisions of the Lloyd-LaFollette Act, 5 U.S.C.A. § 7501, the *Arnett* case elicited five separate opinions from the Court. Nevertheless, our hand is clearly guided by that case, inasmuch as six Justices expressly concurred in the proposition that a post-termination hearing was sufficient to protect those interests meriting due process protection, whether those interests were in the nature of "property"

or "liberty." The plurality opinion in *Arnett* indicated that by incorporating express procedures into the statute which also conferred rights on federal employees, Congress delineated the full extent of the "property interest" enjoyed by the employee in continued retention of his post. The Lloyd-LaFollette Act was thus viewed as focused "strongly on the procedural mechanism for enforcing the substantive right which was simultaneously conferred. . . . " Id. at 1643.

It cannot be said that the legislative forcus of the National Guard Technician Act (NGTA) is as clearly centered as was Lloyd-LaFollette on procedural mechanisms for vindicating substantive rights, although Congress did prescribe certain removal procedures in the NGTA. 32 U.S.C.A. § 709(e)(5), (6). We do not view this distinction as critical, however, for three reasons. First, unlike Lloyd-LaFollette, which expressly states that an employee may not be removed unless sufficient cause warrants termination, the NGTA does not *expressly* confer any such right of job retention, an understandable difference in view of the military-related duties of National Guard technicians. Second, Congress did provide for certain procedures in the NGTA in connection with removals for cause, and thus the plurality's reasoning could, without undue strain, also apply to that statute. Thirdly, two concurring Justices disagreed with the plurality's limited basis of statutory construction, assumed the existence of a cognizable property interest on the part of the discharged employee, and viewed existing pre-termination procedures as constitutionally adequate.

■ Similar procedures to those used in *Arnett* were employed with respect to Davis' termination. Davis was provided with notice of the charge and granted a reasonable opportunity to respond prior to his discharge.[1] Subsequent to his

---

1. In the notice of proposed removal, the detachment commander also informed him of the following prerogatives: (1) if Davis chose to reply orally, he could be accompanied by a representative of his choice; (2) he could submit affidavits to support his answer; (3) if he did not understand the reasons for the proposed removal he could contact the detachment personnel officer for further explanation; (4) he would be al-

dismissal he was afforded a full-scale evidentiary hearing presided over by a hearing examiner. *Arnett* demands no more.

■ Davis' argument regarding biased decision-makers is equally without force. Five Justices in *Arnett* perceived no constitutional infirmity in the employee's being dismissed by the very person who initially brought the charges of misconduct. In the case *sub judice*, Davis was dismissed not by the charging party, the detachment commander, but by the detachment personnel officer who acted with the approval of the State Adjutant General. We can only conclude that in this respect the Air National Guard provided more than the Constitution required.

■ Finding Davis' other contentions unmeritorious,[2] we affirm.

Affirmed.

---

lowed eight hours of official time to review the material and prepare an answer; (5) material relied on by the charging party would be available to Davis for his examination.

2. Davis mounts a hydra-like attack on the lawfulness *per se* of his dismissal, apart from constitutional considerations. Suffice it to say that, despite the severity of the sanction imposed, we cannot view the authorities' response to Davis' admitted misconduct as so harsh as to evidence arbitrary or capricious action. We also agree that Davis' failure to report an off-base collision for which he was responsible was substantial enough to constitute "cause" for dismissal within the meaning of 32 U.S.C.A. § 709(e)(3). Finally, we are unpersuaded by his contentions regarding the hearing examiner's exclusion of certain evidence of bias, particularly since the Adjutant General subsequently offered to re-open the hearing to receive any testimony which Davis deemed helpful.