Ramsey **ALEXANDER** and **Robert F. Newman, Raymond L. Dennis** and **Warner McCreary, Intervening Petitioners,**

v.

**AVCO CORPORATION—AEROSPACE STRUCTURES DIVISION, NASHVILLE, TENNESSEE,** and **Aero Lodge No. 735 of the International Association of Machinists and Aerospace Workers, AFL–CIO.**

**Civ. Nos. 4335 and 5258.**

United States District Court, M. D. Tennessee, Nashville Division.

Aug. 20, 1974.

Avon N. Williams, Jr., Nashville, Tenn., Jack Greenberg and Leroy D. Clark, New York City, for plaintiffs.

William Waller, Robert G. McCullough, Nashville, Tenn., for Avco.

Cecil D. Branstetter, Nashville, Tenn., for Aero Lodge #735, etc.

Lutz A. Prager, Equal Employment Opp. Comm., Washington, D. C., for Equal Employment Opportunity.

## MEMORANDUM

MORTON, District Judge.

On July 12, 1974, a hearing was held in which attorneys for plaintiffs and defendants espoused their theories as to the implementation of this court's memorandum opinion of December 18, 1973. Prior to the hearing, the parties to the lawsuit had filed their proposed plans. Essentially, the plaintiffs propound a scheme whereby this court would monitor the daily activities of the defendants; the defendants' proposal, on the other hand, grants no relief to the plaintiffs. This court, therefore, assumes the duty of structuring relief which is formulated to remedy past discriminatory practices of the defendants. United States v. Masonry Contractors Association of Memphis, Inc., 497 F.2d 871 (6th Cir. 1974).

## INDIVIDUAL RELIEF

*Robert F. Newman*

■ Plaintiff, Robert F. Newman, must be re-employed by defendant Avco

with no loss of seniority. Furthermore, plaintiff is to recover from Avco those wages which he would have earned on and after December 30, 1967, less all income received by him from subsequent employment and unemployment compensation. The usual FICA and income tax withholding shall also be deducted from plaintiff's recovery.

Mr. Newman shall also be subject to any requisite physical examination of the company applicable to those employees who have been reinstated after a layoff from work.

### Ramsey Alexander

Plaintiff, Ramsey Alexander, is to be awarded seniority status as a brickmason from July, 1966 to the present. Further, he is to recover from Avco those wages which he would have earned in the aforementioned status as a brickmason from August 1, 1966, to the present, minus any pay received from Avco during said period. Avco is not required to displace any brickmason presently in its employ in order to compensate Mr. Alexander.

### Raymond L. Dennis

Plaintiff, Raymond L. Dennis, must be re-employed by Avco with no loss of seniority. Further, Avco is to compensate Mr. Dennis with those wages which he would have earned on and subsequent to January 26, 1971, less concomitant pay received by him from any employment, unemployment compensation, and the normal withholding for FICA and income tax. He shall also be subject to any requisite physical examination of the company applicable to those employees who have been reinstated after a layoff from work.

### GENERAL RELIEF

The defendant Avco will implement the following procedures:

1. Up-to-date applications, which shall detail all educational background and previous work experience at Avco and elsewhere, will be taken from all black employees. Appropriate officers at Avco shall render good faith assistance to each black employee in eliciting the aforementioned information which shall be kept in a file with the employee's name affixed thereto. No other information, correspondence or documents shall be placed in these files, which shall be adverted to hereafter as the "transfer" files.

2. Bid procedures currently in effect will be circulated in writing to all black employees.

3. "Occupational Recall" is hereby eliminated.

4. All job openings for non-supervisory employees shall be prominently posted in each of the company's working areas (e. g., "Bench and jig," "Maintenance," etc.) not less than three days prior to filling the jobs. During said three-day period, black employees may go to the company office and make bids for the jobs during or subsequent to their respective shifts.

5. Blacks may bid on all job openings based on plantwide seniority without the contract limitation of occupational seniority. No limitation shall be placed on the number of bids which may be made annually by blacks.

6. Upon receipt of a bid from a black employee, the appropriate company "employee" (defined and designated, *infra*, No. 9) shall examine only the "transfer" file of such employee to determine the applicant's fitness for the job opening. No other information, evaluation, opinion or documentation shall be received or used by said company employee in ascertaining the fitness of the bidder.

In those instances where there are both black and white aspirants for a job opening, the company employee shall review only those up-to-date application forms of white employees which are similar to those of the black employees in the "transfer" file. Any other information, evaluation, opinion or documentation is strictly prohibited from review by said company employee in deciding between the black and white applicants.

Job equity is hereby eliminated as a factor in the aforesaid determination. The previous experience of an applicant, however, as reflected on an up-to-date application form, may be considered in the evaluation by the company employee as to who would best satisfy the job opening.

7. To offset the previous policy of informal on-the-job training when a black employee is selected for transfer to a new job, the black transferree shall be afforded twice the "customary trial period" to meet the job requirement than that given to white transferrees. If the black transferree has not satisfied the job requirements within such stipulated time, he may be demoted to his previous job position without loss of seniority, subject to the grievance procedure hereinafter set forth (No. 8, *infra.*). During such aforesaid period, good faith, informal, on-the-job training should be made available to the black employee by the immediate supervisory personnel.

8. When a black employee asserts that the foregoing steps have not been properly implemented or alleges that he is the subject of any racially discriminatory treatment, he may file a written grievance which sets forth his complaints against Avco through the company employee. Avco shall have five (5) days within which to evaluate the grievance. If the company determines that the grievance is proper, it must remedy the situation. If the company rejects the grievance, it shall notify the complainant in writing of its conclusion within five (5) days after the grievance was filed. Concomitantly, Avco shall also request in writing that the Federal Mediation and Conciliation Service submit a panel of five arbitrators. On receipt of the designation of the panel, the company shall submit said list of panelists to the complainant. Within three (3) days thereafter, the complainant shall deliver a written statement to Avco in which the complainant selects one member of the designated panel to hear the grievance.

At the hearing, the company, the union, the complainant and his attorney, if any, may appear to submit evidence and argue the issues. A copy of the memorandum opinion of this court filed December 18, 1973, and a copy of this particular memorandum shall be furnished to the arbitrator. The decision of the arbitrator, if supported by substantial evidence, shall be final and conclusive as to the company, the union and the complainant.

9. The "company employee" adverted to hereinbefore, may be any employee of the company who is not an officer, stockholder, director, and who was not a witness in the trial of this lawsuit.

10. The above plan will remain in effect for one year. The company shall file with the court within thirty (30) days from the date of this memorandum documents reflecting the total number of non-supervisory employees, their job classifications, their race and the number and percentage of blacks in each job classification. A similar report shall be filed at three-month intervals thereafter. A review of Avco's progress in alleviating racial discrimination will be held by the court subsequent to the filing of the fourth quarterly report by said company. On application of any party, the court may consider an earlier review.

11. The provisions of the existing collective bargaining agreement and those of any future agreements between the company and the union are not binding if their enforcement is contrary to the provisions of this memorandum or if the enforcement would result in discrimination against any black employee.

12. The defendant Avco is enjoined and restrained from racial discrimination of any kind in the classification, transfer, promotion or termination of its employees.

### CLASS ACTION

Defendants contend that this cause must not continue as a class action. The basis for this assertion is that no notice has been given to any member of the class.

■ The action was sustained as a 23(b)(2) class action, Rule 23, F.R.Civ. P. The primary impetus of this suit is the expurgation of defendants' discriminatory employment practices. Pecuniary remuneration is purely incidental to this suit's principal purpose. See Robinson v. Lorillard Corporation, 444 F.2d 791 (4th Cir. 1971); Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122 (5th Cir. 1969); see also Bowe v. Colgate-Palmolive Company, 416 F.2d 711 (7th Cir. 1969).

In situations where both (b)(2) and (b)(3) are appropriate, it is said that the (b)(2) action is preferable because of its broader *res judicata* effect; this is especially the case in civil rights suits. See Bing v. Roadway Express, Inc., 485 F.2d 441 (5th Cir. 1973); Johnson v. City of Baton Rouge, Louisiana, 50 F.R. D. 295 (E.D.La.1970). To some courts the desirability of the (b)(2) action has appeared to emanate, at least in part, from the idea that notice is not required in (b)(2) actions (e. g., school desegregation and discrimination in employment cases).

There is, however, a growing body of authority, including the Sixth Circuit Court of Appeals, which espouses the theory that notice as a matter of due process is required in all representative actions if the resulting judgment is to be binding on absent class members; i. e., if there is no notice, there is no class action. Zeilstra v. Tarr, 466 F.2d 111 (6th Cir. 1972); Schrader v. Selective Service Sys. Loc. Bd. No. 76 of Wis., 470 F.2d 73 (7th Cir. 1972); Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2nd Cir. 1968); Pasquier v. Tarr, 318 F.Supp. 1350 (E.D.La.1970), aff'd., 444 F.2d 116 (5th Cir. 1971); Cf, Gregory v. Tarr, 436 F.2d 513 (6th Cir. 1971), n. 2, p. 514.

■ Thus one cannot assume that proper representation of the class plus any attendant publicity will meet due process. Due to the posture of the record in this cause, it is unnecessary to discuss what type of notice must be given in (b)(2) and (b)(3) cases. See Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940); Mullane v. Central Hanover Bank & Trust Company, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); Eisen v. Carlisle & Jacquelin, *supra*.

The court concludes therefore that this cause must not proceed as a class action.

■ This does not terminate the matter however. In the previous memorandum filed in this cause, the court determined that approximately fifty-two (52) black employees were "laid off" in connection with the Globe-Wernicke incident. The court further found that said terminations were racially motivated, in violation of the collective bargaining agreement and in violation of the affirmative action program of Avco. If the court merely determines that this cause can no longer proceed as a class action, the one-year statute of limitations in Tennessee may terminate what legal remedies the affected fifty-two (52) employees have. However, the court recognizes that while this cause is pending as a class action, the statute of limitations may be tolled. See American Pipe and Construction Co., et al. v. Utah, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). As a matter of fundamental fairness, considering the interest of efficiency and economy, and to avoid the possibility of multitudinous litigation, the court feels that the approximately fifty-two (52) individuals hereinbefore mentioned not only should be given notice of this litigation and the termination of it as a class action, but they should also be given an opportunity to intervene in the matter under Rule 24 of the Federal Rules of Civil Procedure. See American Pipe and Construction Co., et al. v. Utah, *supra*.

The defendant Avco is directed to furnish the names and last known addresses of the black employees who were terminated as a result of the Globe-Wernicke incident. The attorney for the plaintiffs will prepare, submit to the court for approval, and mail to said

employees a notice of their right to intervene in this cause.

### ATTORNEYS' FEES

The court finds that the plaintiffs, acting through their attorneys, are essentially vicarious "private attorney[s] general" who are striving to' vindicate a policy that Congress considers of the utmost priority. Attorneys' fees will therefore be awarded. See, e. g., Milburn v. Huecker, Commissioner, 500 F.2d 1279 (6th Cir. 1974).

If the parties cannot agree on a suitable fee, an evidentiary hearing will be held for such determination.

Determination of the apportionment of attorneys' fees and the costs between defendants is reserved.

This case will remain on the active docket; jurisdiction is retained.

An appropriate order shall be entered.