**Pat ELEY and Sheila Skrine, on behalf of themselves and all others similarly situated**

v.

**Leonard MORRIS et al.**

**Civ. A. No. 74–1803A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Feb. 13, 1975.

S.C. § 1983, attacking the manner in which defendants, sued in their official capacity as persons responsible for the administration of the Georgia State Merit System, utilized procedures implemented under that system to terminate plaintiffs' employment. Plaintiffs are former employees of the Georgia Retardation Center covered by the "classified" service provisions of the State Merit System. *See* Ga. Code Ann. § 40–2204. On August 2, 1974, plaintiffs were notified by written memoranda issued by defendants Masachi and Fossett, officials of the Georgia Retardation Center, that they would be dismissed from their jobs effective August 6, 1974. The memorandum notice to plaintiff Skrine advised her that she was being terminated because of her "attitude toward [her] supervisors and other cottage personnel and [her] constant use of profanity . . . ." Plaintiff Eley was advised that she was being dismissed because of her "attitude toward [her] supervisors, [her] constant use of profanity in the cottage and [her] disrespectful and disruptive behavior toward . . . fellow co-workers." Plaintiffs appealed their dismissal to the State Personnel Board, a hearing was held before a deputy hearing officer on September 20, 1974, and on October 23, 1974, the State Personnel Board issued a decision reducing the dismissal to a three-month suspension.

Petitions for intervention have been filed by Barbara Wegman, a former employee of the Georgia Retardation Center, who was discharged on September 1, 1974, and Annie R. Gilbert, a former employee of the Georgia Regional Hospital in Atlanta, who was discharged on October 10, 1974. Both intervenors have invoked the procedures provided by the State Merit System to challenge their discharges, but the court has not been informed concerning the disposition of their cases.

Plaintiffs seek a declaration that the statutory and regulatory scheme governing the termination of classified state employees covered by the State Merit

Myron N. Kramer, David A. Webster, Atlanta, Ga., for plaintiffs.

Arthur K. Bolton, Atty. Gen., Wayne P. Yancey, Asst. Atty. Gen., Atlanta, Ga., for defendants.

Before MORGAN, Circuit Judge, and MOYE and FREEMAN, District Judges.

## ORDER

RICHARD C. FREEMAN, District Judge:

This is an action, brought pursuant to 28 U.S.C. §§ 1343, 2201–2202 and 42 U.

System is unconstitutional in failing to provide a list of specific charges prior to termination and in failing to provide for a pre-termination hearing or other meaningful opportunity to protect plaintiffs' interests before termination. In addition, plaintiffs seek a preliminary and permanent injunction restraining defendants from terminating or suspending any classified employees covered by the State Merit System absent notice of termination which comports with due process of law and a pre-termination hearing. Plaintiffs also seek an award of back pay, costs, and "such further and additional relief as may be just and proper." At the time the complaint was filed, plaintiffs also sought reinstatement, but, this portion of the complaint has apparently been mooted by the aforementioned action of the State Personnel Board. Presumably reinstatement of intervenors Wegman and Gilbert remains a viable remedy.

This action came before the court on September 11, 1974, at which time Judge Freeman denied plaintiffs' request for a temporary restraining order. Plaintiffs have subsequently filed motions for preliminary and permanent injunctive relief, certification of the action as a class action, as well as the aforementioned petitions for intervention. Defendants have filed a motion to deny the petition for intervention filed by Barbara Wegman, together with a motion to dismiss. A three-judge court was convened pursuant to 28 U.S.C. § 2281 and a hearing conducted in this matter on November 25, 1974. In light of the basic agreement of the parties regarding the salient facts giving rise to this claim, as evidenced by a factual stipulation filed on November 11, 1974, the parties agreed that there was no need to introduce further evidence. Upon completion of the hearing, the court ordered supplemental briefs regarding the constitutional question in this action. Both parties have submitted additional briefs and the constitutional issues are now ripe for decision. However, before turning to these issues, the court will consider the pending procedural motions.

## INTERVENTION AND CERTIFICATION OF THE CLASS

■ Defendants' motion to deny intervention by Barbara Wegman is based solely on the fact that "the main action is not properly before this Court." Defendants have not filed a motion or other response in opposition to the petition for intervention filed in behalf of Annie R. Gilbert. Pursuant to Local Court Rule 91.2, "[f]ailure to file a response shall indicate that there is no opposition to the motion." Review of the intervenors' claims reveals that they raise questions of law and fact similar, if not identical, to the questions presented in the complaint filed by the named plaintiffs. Similarly, there is no indication that intervention would cause undue delay or prejudice the rights of defendants. Accordingly, considering the relevant factors and defendants' failure to substantively oppose intervention, the court finds that intervention would be proper under Rule 24(b), Fed.R.Civ.P. See Burney v. North American Rockwell Corp., 302 F.Supp. 86, 91–93 (C.D.Cal. 1969); C. Wright & A. Miller, Federal Practice and Procedure § 1911 (1972). Defendants' motion to deny intervention is DENIED and the motions for intervention are GRANTED.

■ The motion for certification as a class action pursuant to Rule 23, Fed.R.Civ.P., is also unopposed by defendants. This motion, however, presents questions which are somewhat more complex. Plaintiffs do not submit a proposed class definition with this motion. They presumably seek to represent "every present (and future) employee of the State of Georgia who is a covered employee under the Georgia State Merit System." Similarly, plaintiffs have not argued the point of whether or not some form of notice should be sent to the unnamed members of the class. See Freeman v. Motor Convoy, Inc., Civil Action No. 16185 (N. D.Ga., Nov. 6, 1974), reconsideration denied (Jan. 9, 1975). By analogy to the Title VII cases, back pay may be awarded in class actions maintained under Rule 23(b)(2), Fed.R.Civ.P., assuming the

case is not one in which the "appropriate final relief relates exclusively or predominantly to money damages." Franks v. Bowman Transportation Co., 495 F.2d 398, 422 (5th Cir. 1974). Conversely, where the action is predominantly or exclusively for money damages, the action is a Rule 23(b)(3) action which requires that individual notice be sent to all class members at the expense of the named plaintiffs. *See* Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L. Ed.2d 732 (1974). In Freeman v. Motor Convoy, Inc., *supra,* this court adopted a bifurcated approach to this problem, concluding that the court should proceed with the b(2) aspects of the case in order to determine the proper parameters of the action. Then, if

> it later becomes apparent that the action is "predominately" or "exclusively" concerned with the question of a potential monetary award, or if certain members of the general class are primarily interested in monetary relief, it may become necessary to rule that the entire action, or a portion thereof, should be considered under the provisions of Rule 23(b)(3). In that event, it may become necessary to impose the [Rule 23] (c)(2) notice requirement on the class representatives, or alternatively, subdivide the class into (b)(2) and (b)(3) subclasses, thereby easing the overall burden required by the (c)(2) notice requirement.

*Id.* at n. 5.

In the present case, given the fact that the named plaintiffs have been reinstated, it is possible to argue that they are primarily interested in their potential for an award of back pay. However, if the court were eventually to decide, as discussed below, that a monetary award in the form of back pay is precluded by the doctrine of sovereign immunity, the only possible remedy would be in the nature of declaratory and injunctive relief. Furthermore, since the petitions for intervention have been granted, intervenors may represent a class of classified employees seeking equitable relief in the nature of an order for reinstatement. In any event, the bifurcated approach to the class action problem adopted in the *Freeman* case should be equally applicable here.

Accordingly, as it appears that this action fulfills the requirements of Rule 23(a) regarding numerosity, common questions of law or fact, standing, and adequacy of representation, and in the absence of opposition by defendants, plaintiffs request for certification of this action as a class action is granted. This action is hereby ordered to proceed as a class action pursuant to Rule 23(b)(2). The class shall include, subject to redefinition as required, all permanent, classified employees covered by the Georgia State Merit System and all prospective employees. *See* Long v. Sapp, 502 F.2d 34 (5th Cir. 1974); Freeman v. Motor Convoy, Inc., *supra.* Plaintiffs are hereby ordered to provide the potential class members with adequate notice of this action, as set forth in appendix one to this order, either by publication or by posting such notice in the various state agencies and employment centers where potential class members congregate.[1]

## THE MOTION TO DISMISS

The motion to dismiss is predicated on three theories: (1) Sovereign immunity; (2) lack of a substantial federal

---

1. Notice in a class action certified under Rule 23(b)(2) is not mandatory; however better practice often requires at least some form of preliminary notice to ensure that the interests of the unnamed class members are adequately protected. *See* Bing v. Roadway Express, Inc., 485 F.2d 441, 448-49 (5th Cir. 1973). *See generally* Freeman v. Motor Convoy, Inc., *supra.* In fact, some courts have ruled that the notice requirement in hybrid (b)(2) and (b)(3) actions should be deemed to be mandatory. *See* Alexander v. Avco Corp., 380 F.Supp. 1282 (M.D.Tenn.1974); Ellison v. Rock Hill Printing & Finishing Co., 64 F.R.D. 415 (D.S.C.1974); Brewer v. Republic Steel Corp., 64 F.R.D. 591 (N.D.Ohio 1974).

question; and (3) failure to state a claim. The third theory raises the merits of the issues which must be considered by the three-judge court, and will be discussed below. The other two theories do not present a bar to consideration of the action at this stage in the proceeding.

First, defendants' jurisdictional argument regarding lack of a substantial federal question is without merit, since it is settled law that the court should not dismiss for want of subject matter jurisdiction unless the federal claim is frivolous or a mere matter of form. It is enough if the complaint states a case arising under federal law, even though on the merits the party may have no federal right. Mindes v. Seaman, 453 F.2d 197 (5th Cir. 1971), quoting C. Wright, Law of Federal Courts 62 (2d ed. 1970). See also Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). As noted below, this complaint presents an unsettled constitutional question on the merits, and certainly, insofar as it invokes jurisdiction pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983, it is not so clearly frivolous that dismissal for lack of subject matter jurisdiction would be proper.

With respect to the sovereign immunity claim, "[i]t is now rubric that state officials may be sued in federal court on the basis that the state statutes under which they are acting are unconstitutional." Mobil Oil Corp. v. Kelley, 493 F.2d 784, 786 (5th Cir. 1974). However, when claims for injunctive relief against state officials sued in their official capacity are joined with claims for monetary relief in the form of back pay or attorney's fees, sovereign immunity may constitute a bar to the monetary relief. Several courts have ruled, relying on the Supreme Court's opinion in Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (Eleventh Amendment precludes recovery of retroactive welfare benefits), that the doctrine of sovereign immunity prohibits a monetary award when the amount of that award would be paid from the state treasury. See Jordan v. Gilligan, 500 F.2d 701 (6th Cir. 1974) (Eleventh Amendment bars award of attorney's fees), accord, Skehan v. Board of Trustees, 501 F.2d 31, 41–44, (3d Cir. 1974). The Court of Appeals for the Fifth Circuit has followed Edelman in denying classwide recovery of retroactive AFDC benefits, Adams v. Harden, 493 F.2d 21 (5th Cir. 1974); however, the Fifth Circuit Court has previously ruled that attorneys fees may be recovered from the general state treasury in civil rights cases, since an award of attorney's fees is not strictly an award of damages against the state. Gates v. Collier, 489 F.2d 298 (5th Cir. 1973), petition for rehearing en banc granted, 500 F.2d 1382 (5th Cir. 1974). Notwithstanding the possible validity or invalidity of the Gates panel decision in light of Edelman, a more recent case indicates that sovereign immunity may constitute a bar to recovery of back pay awards in cases complaining of state employment practices. See Thompson v. Madison County Board of Education, 496 F.2d 682 (5th Cir. 1974) (remanded for consideration by the district court). While this is an unsettled issue in this jurisdiction, it is also an issue that may be more appropriately resolved by a single-judge district court, consistent with the resolution of the bifurcated class action issues discussed above.

The remaining issue raised by defendants' motion to dismiss presents the merits of the question which must be decided by the three-judge court.

### THE MERITS OF THE CASE

In their complaint, plaintiffs specifically attack Rule 12.501.2, see Appendix Two, of the State Merit System. This rule sets out standards governing the dismissal of permanent state employees and provides for pre-termination notice including the following information: (1) A statement of discharge; (2) the effective date of dismissal; (3) either specific charges or notice that the employee may obtain a statement of the specific charges; and (4) notice of an

employee's right to appeal under Rule 14 [*see* Appendix Three]. Plaintiffs and intervenors herein were discharged pursuant to this procedure. All four complainants received less than one week's advance notice of their dismissal (applicable regulations do not provide for any delay between the receipt of notice and the discharge date). Plaintiffs received a statement of charges, as set forth *supra*; however, intervenors were not notified of the reasons for their discharge. Plaintiffs appealed their discharge and were reinstated. Intervenors have also envoked the Rule 12.501.2 appeal process; however, the court has not yet been informed of the disposition of their appeals. Complainants specifically attack the failure of defendants, pursuant to applicable rules and regulations, to provide them with notice of the specific charges and an opportunity to refute those charges, either by means of a hearing or by some other method, prior to the effective date of their dismissal.

 Due process attacks on discharge procedures controlling a government employee's termination of employment are subject to a three-step inquiry. First, the court must determine whether an employee has a sufficient "liberty" or "property" interest in his continued employment to warrant constitutional protection. Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). If so, the court must determine whether or not the employee should be entitled to a hearing before termination; or alternatively, the court must conclude the third step in the inquiry and determine whether the pre-termination procedures actually implemented comport with minimal due process requirements. This third inquiry presents the unsettled question which must be decided by this court since there is ample authority to support the proposition that a permanent or "classified" state employee has a sufficient property interest in his job to warrant due process protection, even though such

protection does not include the right to a pre-termination hearing.

The leading case in this area is Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), in which the Supreme Court upheld the discharge of a nonprobationary federal employee pursuant to the provisions of the Lloyd-La-Follette Act, 5 U.S.C. § 7501. In light of the fact that five separate opinions were filed in *Arnett*, the rationale in that case is by no means clear; however, *Arnett* has been generally interpreted to stand for two central propositions. First, the courts reaching the issue after *Arnett* have uniformly held that "a post-termination hearing was sufficient to protect those interests meriting due process protection, whether those interests were in the nature of 'property' or 'liberty.'" Davis v. Vandiver, 494 F.2d 830, 832 (5th Cir. 1974) (discharge of air national guard technician); accord Brubaker v. Board of Education, 502 F.2d 973, 988–89 (7th Cir. 1974) (teacher dismissal); Mondell v. Mayor and City Council of Baltimore, 378 F.Supp. 219, 222–23 (D.Md.1974) (dismissal of city employee). Similarly, the *Mondell* court described the other fundamental proposition which may be gleaned from *Arnett* as follows: "'While the State may define what is and what is not property, once having defined those rights the Constitution defines due process' and thus 'the nature of the procedures required' with regard to termination of a property right." 378 F.Supp. at 222.

Plaintiffs express the fundamental proposition of constitutional due process as follows: "[D]eprivation of any property or entitlement by state or federal officials, without notice and an opportunity for a prior hearing is violative of procedural due process." Although this statement is unduly broad, plaintiffs correctly note that a line of uniform precedent now protects formerly unprotected "privileges" under the mandates of procedural due process. *E. g.,* Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Fuentes v. Shevin,

407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1971); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L. Ed.2d 349 (1969). The public employee cases are somewhat sui generis; yet they have generally followed the *Fuentes-Goldberg* line of reasoning to the extent that an employee may not be deprived of his property or liberty interest in continued government employment absent some due process protections. *See* Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).[2]

The argument that procedural due process entitles a public employee to a full evidentiary hearing prior to discharge was rejected by the Supreme Court in Arnett v. Kennedy, *supra*, and has been abandoned in part by plaintiffs. Plaintiffs now argue that the decision in *Arnett* stands for the proposition that where the protections afforded government employees are substantially equivalent to a pre-termination hearing, these procedures adequately comport with due process mandates. Conversely,

plaintiffs argue that "[a]ny scheme which deviates from the *Arnett* line of cases by failing to provide for any prior mechanisms for screening out arbitrary and unjustified deprivations and fails positively to insure the reliability of the initial decision must fall as unconstitutional." Thus, plaintiffs state that the fundamental question in this case is "whether the pretermination protections (if any) given the discharged employees in the instant case are similar to those existing in *Arnett*. . . ."

Of course the State interprets *Arnett* much more restrictively, arguing that the Government is required to provide dismissed employees with a full evidentiary post-termination hearing and no more. In reaching this conclusion, defendants argue that an employee is adequately protected by the opportunity for other employment, the receipt of termination pay, and the potential for welfare benefits. *But see id.*, 416 U.S. at 194, 94 S.Ct. at 1664 (White, J., concurring) (such protections may be inadequate). In addition, the State relies on its substantial interest in expeditiously removing an unsatisfactory employee, concluding that balancing the competing issues involved results in a finding that provid-

2. It may be argued that the ruling in Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S. Ct. 1895, 40 L.Ed.2d 406 (1974) limited the holdings of the *Fuentes-Goldberg* line of cases somewhat, *see* note 3 *infra*; however there is a significant distinction between seizing tangible property pursuant to a scheme providing for an immediate post-seizure hearing, particularly when the entire proceeding is under "judicial control . . . from beginning to end", Mitchell v. W. T. Grant Co., *supra* at 616, 94 S.Ct. at 1904–05, and the termination of a right to continued government employment. Dissenting in part in Arnett v. Kennedy, Justice White uses analogous reasoning to that employed in *Mitchell*, when he notes that the regulatory scheme in *Arnett* "converges" with the Constitution "because a full trial-type hearing is provided by statute before termination from the service becomes final, by way of appeal . . . ." 94 S.Ct. at 1660. It should be noted, however, that the *Mitchell* case was decided one month after *Arnett*; therefore if *Arnett* and *Mitchell* had involved identical considerations, the opinions filed in

*Mitchell* would have devoted more attention to the result in *Arnett*. In fact, only Justice Powell, in his concurring opinion, referred to *Arnett* at all:

> The constitutional guarantee of procedural due process applies to governmental deprivation of a legitimate "property" or "liberty" interest within the meaning of the Fifth or Fourteenth Amendment. It requires that any such deprivation be accompanied by minimum procedural safeguards, including some form of notice and a hearing. Arnett v. Kennedy . . . [also citing *Roth* and *Sindermann*].

Mitchell v. W. T. Grant, *supra* at 624, 94 S. Ct. at 1908. The failure of the *Mitchell* court to rely on *Arnett* supports the proposition that the employment termination cases are somewhat sui generis; and, in any event, consideration of the procedural protections provided by the statutory scheme in *Mitchell*, particularly with respect to judicial supervision, has convinced us that the *Mitchell* ruling does not compel a finding that the procedural scheme in issue here should pass constitutional muster.

ing an opportunity to refute the charges justifying dismissal before the effective date of dismissal should not be constitutionally compelled.

Unfortunately, neither plaintiffs nor defendants have cited any cases which clearly face the issue presented to this court: absent a pre-termination hearing, what due process procedures should be afforded to public employees to ensure that their property and liberty interests in continued employment are adequately protected. The most authoritative ruling issued to date in this Circuit contains the following language:

> Similar procedures to those used in *Arnett* were employed [here]. [Plaintiff] was provided with notice of the charge and granted a reasonable opportunity to respond prior to his discharge. Subsequent to his dismissal he was afforded a full-scale evidentiary hearing presided over by a hearing examiner. *Arnett demands no more.*

Davis v. Vandiver, 494 F.2d 830, 832 (5th Cir. 1974) (emphasis added). The question for this court is whether *Arnett* demands as much, i. e., procedures "substantially equivalent" to those cited as sufficient to comport with minimal due process mandates: (1) advance notice of the charge; (2) an opportunity to respond to the charge; and (3) a pre-termination opportunity to refute the charge before a responsible official. *See id.*, 416 U.S. at 140–144, 94 S.Ct. at 1638–39.

█ Plaintiffs have not proposed a test for determining whether the protections afforded by the regulatory scheme are adequate. Defendants argue, and we agree, that the proper approach involves a balancing test which compares "the Government's interest in expeditious removal of an unsatisfactory employee . . . against the interest of the affected employee in continued public employment." Arnett v. Kennedy, *supra* at 167, 94 S.Ct. at 1651 (Powell, J., concurring). In fact, this type of analysis was employed by the majority

of the Court in ruling on analogous issues in a recent case. *See* Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed. 2d 725 (1975). In *Goss*, the Supreme Court affirmed a decision of a three-judge district court ruling that certain regulations and provisions of Ohio law were unconstitutional in permitting high school students to be temporarily suspended from school without providing minimal due process protections. Relying on the fundamental proposition espoused by a majority of the Court in Arnett v. Kennedy, Justice White, writing for the majority of the Court in *Goss*, concluded that '[h]aving chosen to extend the right to an education to people of appellees' class generally, Ohio may not withdraw that right on grounds of misconduct absent fundamentally fair procedures to determine whether the misconduct has occurred." *Id.* at 574, 95 S.Ct. at 736. After reaching the conclusion that due process protections applied, Justice White turned to the question of "what process is due." This question was resolved as follows:

> [S]tudents facing suspension and the consequent interference with a protected property interest must be given *some* kind of notice and afforded *some* kind of hearing. . . .
>
> . . . [T]he timing and content of the notice and the nature of the hearing will depend on appropriate accommodation of the competing interests involved. [citations omitted]. The student's interest is to avoid unfair or mistaken exclusion from the educational process, with all of its unfortunate consequences. The Due Process Clause will not shield him from suspensions properly imposed, but it deserves both his interest and the interest of the State if his suspension is in fact unwarranted. . . . The risk of error [in the disciplinary process] is not at all trivial, and it should be guarded against if that may be done without prohibitive cost or interference with the educational process.
>
> . . . . . .

"[F]airness can rarely be obtained by secret, one-sided determination of the facts decisive of rights. . . . Secrecy is not congenial to truth-seeking and self-righteousness gives too slender an assurance of rightness. No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it." [citation omitted].

We do not believe that school authorities must be totally free from notice and hearing requirements if their schools are to operate with acceptable efficiency. Students facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story. The clause requires at least these rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusions from school.

*Id.* at 580, 95 S.Ct. at 739. The *Goss* Court expressly limited its holding to temporary, short term suspensions, noting that more serious deprivations may require more "formal" procedures.

If not directly controlling, Justice White's opinion in *Goss* certainly supports the proposition that some "rudimentary precautions" should also be deemed applicable in cases involving the discharge or suspension of government employees. No case involving dismissal of a public employee decided after Arnett v. Kennedy has resulted in a finding that the discharged employee was entitled to a pre-termination hearing; however, no case has specifically upheld the constitutionality of a post-discharge hearing procedure in the absence of some pre-termination protections. The implication of the public employee cases and the express holding of Goss v. Lopez is that some due process protections should be deemed applicable to the initial stages of the discharge procedure. Such a ruling is consistent with the general concept of procedural due process expressed in prior cases, and summarized by the following language:

> [I]t is fundamental that *except in emergency situations* . . . due process requires that when a State seeks to terminate [a protected] interest . . . it must afford "notice and opportunity for [a] hearing *appropriate to the nature of the case"* before the termination becomes effective.[3]

Bell v. Burson, *supra*, 402 U.S. at 542, 91 S.Ct. at 1591. *See* Goss v. Lopez, *su-*

3. In an earlier and simpler time, it was well settled that "[i]t is [constitutionally] sufficient, where only property rights are concerned, that there is at some stage an opportunity for a hearing and a judicial determination." Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950) (Douglas, J.) (seizure of misbranded drugs). Thus, in ordinary circumstances, a post-seizure judicial hearing prior to final confiscation was deemed sufficient. *See, e. g., id. But see id.* at 603, 70 S.Ct. at 875 (Frankfurter, J., dissenting) (in extreme cases possibly reckless and arbitrary action should be subject to preliminary review). More recently, the Supreme Court in the *Fuentes-Goldberg* line of cases adopted the view implicitly recommended by the *Ewing* dissenters that certain classes of seizures should be subject to preliminary judicial scrutiny. In fact, the above-quoted por-

tion of the opinion in Bell v. Burson cites *Ewing* as an example of one of the "emergency situations" justifying pre-termination seizure without providing notice and an opportunity for a hearing. Last term, the Supreme Court arguably reversed its stand once again by implicitly returning to the *Ewing* rule that summary forfeitures are sufficient where the right to a hearing is afforded before one is finally deprived of his property. Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 1902, 40 L.Ed.2d 406 (1974). The majority opinion in *Mitchell* distinguished *Fuentes* and *Bell* based on the adequacy of the protection afforded by the Louisiana statute in issue and because the *Fuentes* and *Bell* cases involved a "fault standard . . . ill-suited for preliminary *ex parte* determination." *Id.* at 1905. The concurring and dissenting judges generally agreed that the effect of the majority opin-

*pra.* The *Arnett* decision ruled that the procedures available under the Lloyd-LaFollette Act, 5 U.S.C. § 7501, were sufficient, considering the nature of the interests involved in a government employee discharge case. In light of *Goss,* we believe that similar procedures should be guaranteed in such cases as a matter of a constitutional right.

■■■ Consideration of the competing interests involved also compels a finding that the discharge procedures provided by the Georgia State Merit System fail to pass constitutional muster. In all but exceptional cases, the burden imposed upon the government of affording the employee some opportunity to refute the charges resulting in his discharge prior to his termination would seem slight in comparison to the burden upon the employee of being terminated for possibly arbitrary and capricious reasons or for reasons which are merely fabrications propounded by a jealous and vindictive superior. Of course, affording a government employee the right to contest a discharge decision before the person responsible for initiation of the discharge in the first instance is of little value. In order for an informal, pre-termination procedure to provide a

satisfactory, even though interim, remedy, the procedure must be prompt, efficient and constitutionally sufficient.

■■■ Under Arnett v. Kennedy, adequate pre-termination procedures need not include a full, evidentiary hearing, provided an employee is protected by a timely and effective post-discharge *hearing* procedure. The other minimal protections which should be afforded in these circumstances are unclear, but standards identical to those upheld in *Arnett* would be constitutionally permissible. As a minimum, pre-termination procedures should include enough delay between receipt of an initial discharge notice and the termination date to allow the discharged employee to obtain a statement of the charges and to refute those charges, in writing and supported by affidavits, before a responsible state official. This official should have sufficient supervisory authority over the employee's immediate superior to countermand or delay the discharge or to make further inquiry into the matter, as appropriate.[4] Conversely, adequate procedures may also contain some provision for those exceptional cases warranting an immediate discharge.[5] The parties should be able to agree on a basic cata-

---

ion in *Mitchell* is to overrule Fuentes v. Shevin. *See id.* at 1908 (Powell, J., concurring); *id.* at 1910–1914 (Stewart, J., dissenting); *id.* (Brennan, J., dissenting). *But see* North Georgia Finishing, Inc., v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *id.* at 608, 95 S.Ct. at 723 (Stewart, J., concurring) ("My report of the demise of Fuentes v. Shevin . . . seems to have been greatly exaggerated."). In *Di-Chem, Inc.,* the Supreme Court ruled that the Georgia garnishment statute was unconstitutional since it did not have any of the saving characteristics of the Louisiana statute upheld in *Mitchell.* However, the *Di-Chem, Inc.* opinion does not amplify the "emergency situation" dichotomy of the Bell v. Burson and Ewing v. Mytinger & Casselberry, Inc. cases.

4. The informal hearing procedure deemed constitutionally mandated in Goss v. Lopez was designed largely to provide a "meaningful hedge" against unfair, mistaken, and erroneous suspensions. The Court also noted that as a result of such procedures, the disciplinarian will be alerted to the exis-

tence of disputes about facts and arguments about cause and effect. He may then determine himself to summon the accuser, permit cross-examination and allow the student to present his own witnesses. In more difficult cases, he may permit counsel. In any event, his discretion will be more informed and we think the risk of error substantially reduced.
*Id.* at 583, 95 S.Ct. at 741.

5. Notwithstanding problems regarding adherence to stare decisis in the area of procedural due process, *see* note 3 *supra*; Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S. Ct. 1895, 1910–11, 40 L.Ed.2d 406 (Stewart, J., dissenting), there is ample precedent to support the proposition that at least in emergency situations, the government may terminate a protected interest without affording any protections other than the right to a hearing before the termination becomes final. *See* Bell v. Burson, *supra*, 402 U.S. at 542, 91 S.Ct. 1586; cases cited note 3, *supra. See generally* Young v. Hutchins, 383 F.Supp. 1167 (M.D.Fla.1974).

log of specific offenses, such as felony or other disruptive criminal and similar offenses which, if proved, would warrant immediate dismissal in light of the substantial prejudice which would result to the State if the employee were allowed to continue in his or her present capacity. In the event of substantial disagreement in this area, the parties may petition the court for approval of a proposed plan.

Accordingly, for the reasons hereinabove expressed, defendants' motion to dismiss the complaint is DE-NIED. We hereby DECLARE that Rule 12.501.2 of the Georgia State Merit System is unconstitutional in failing to provide adequate Fourteenth Amendment protections to classified state employees. Defendants are hereby EN-JOINED from terminating or suspending the employment of classified state employees covered by the State Merit System until such time as procedures and regulations are adopted which adequately comport with due process mandates, as set forth above.

Should plaintiffs desire to pursue further their claims for back pay and reinstatement, either in their individual capacity or in behalf of their class, they should do so by filing with Judge Freeman's court a Notice of Intention within thirty (30) days of the date of this order.

### APPENDIX ONE

### NOTICE

TO: ALL CLASSIFIED EMPLOYEES COVERED BY THE GEORGIA STATE MERIT SYSTEM

Please take notice that there is now pending in the United States District Court in Atlanta, Georgia, a civil action against certain named officials of the State of Georgia who are responsible for the administration of the State Merit System, Civil Action No. 74–1803.

This lawsuit attacks the constitutionality of statutory and regulatory provisions of the Georgia Merit System for their failure to provide adequate protections to classified state employees during the preliminary stages of the procedure leading to their termination from employment. The named plaintiffs in this lawsuit, Pat Eley, Sheila Skrine, Barbara Wegman and Annie Gilbert, sought and have obtained a court order declaring Rule 501.2 of the State Merit System unconstitutional and preventing defendants from discharging classified state employees until adequate procedures are adopted which protect the employees' constitutional rights. Plaintiffs also seek an award of back pay for all employees who have been terminated under these procedures since the date of this lawsuit, September 11, 1974.

If you desire additional information about this lawsuit, including the names of the attorneys representing the named plaintiffs, or if you wish to join the lawsuit as an individual, in addition to being present before the court as a part of the class, you should contact your job supervisor, or the above-named parties within thirty (30) days of the date of this notice. You will receive additional notice concerning your potential entitlement to an award of back pay, if any, at a future date.

### APPENDIX TWO

PAR. 12.501.2. Dismissal for cause is defined as the dismissal being in the best interest of the department based on: negligence or inefficiency in performing the duties of the position held; unfitness to perform assigned duties; insubordination; misconduct; conduct reflecting discredit on the department; failure to report for work without justifiable cause; chronic absenteeism; or political activity in violation of Rule 3. The dismissal notice need not include a statement of the specific charges for dismissal, but shall include:

A. A statement that the appointing authority has determined that it is in the best interest of the department that the employee be dismissed;

B. The effective date of the dismissal;

C. If specific charges were not given in the letter of dismissal a statement advising the employee that if he wishes a statement of the specific charges of dismissal, a request shall be made to the appointing authority in writing within fifteen calendar days after the notification of the action was delivered in person or mailed or from the effective date of the action, whichever is later, and such a statement shall be furnished him within fifteen calendar days after receipt; and

D. A statement advising the employee that he may appeal the dismissal by requesting a hearing under the provisions of Rule 14.

### APPENDIX THREE

### RULE 14. APPEALS

## SECTION 14.100. GENERAL PROVISIONS

PAR. 14.101. All appeals to the Board shall be filed in writing with the Director. Except for appeals under Par. 14.-204 or 14.205 all appeals must be filed within fifteen (15) calendar days after; whichever is later: (1) the notification of the action in question was mailed or delivered in person; or (2) from the effective date of the action; or (3) from the date of the mailing or delivering in person of the specific reason when requested by the appellant.

## SECTION 14.200. REASONS FOR WHICH APPEALS MAY BE FILED

PAR. 14.201. An eligible whose name has been removed from a register for any of the reasons specified in Rule 7 of these rules may appeal to the Board for reconsideration as provided in Par. 14.-101.

PAR. 14.202. Any permanent employee who is demoted for cause or subjected to a disciplinary salary reduction may appeal to the Board as provided in Par. 14.101.

PAR. 14.203. Any permanent employee who is dismissed or suspended under the provisions of Rule 12 may appeal to the Board as provided in Par. 14.101.

PAR. 14.204. Any employee, applicant for employment, or former employee who believes he has been unjustly discriminated against, may appeal to the Board. An employee, however, must first utilize the employee complaint procedure as established in Regulation F. For purposes of this rule, the term discrimination is limited to those matters outlined in Paragraph 3.501 of Rule 3.

PAR. 14.205. An officer, employee, or citizen who believes that these rules are working, or are apt to work, an unnecessary hardship on him or his agency, or that the efficiency of the Merit System or the member departments of the Merit System can be improved by amendment of these rules may appear before the Board at any of its regular meetings and shall have a right to a hearing on the matter. A signed request stating the grounds for a hearing on such a matter must first be filed with the Director at least fifteen (15) calendar days prior to the meeting. The Director shall immediately transmit a copy of the request to each board member and to the appointing authorities.

## SECTION 14.300. HEARING OFFICER OF THE BOARD

PAR. 14.301. The Board may, in its discretion, appoint a hearing officer for purposes of holding hearings, compiling evidence and submitting such evidence to the Board for its determination, and for making investigations on behalf of the Board and the Director relating to personnel matters. Hearings shall be before the hearing officer unless otherwise specified by the Board. On any appeal heard by the hearing officer, the decision of the Board will be based on a review of the record and no further evidentiary hearing will be held.

PAR. 14.302. The Board may, in its discretion, request oral arguments, or

the filing of written memoranda by both parties.

Georgia State Merit System

Adopted Date September 18, 1974
Effective date October 1, 1974

MOYE, District Judge (dissenting):

I respectfully dissent from the opinion of the majority in the above case.

I do not believe that the dicta in Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), require, as a condition of constitutionality, the establishment of any rigid time limits, or any particular procedures prior to termination. Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), appears to confirm this analysis because Justice White said therein only that "some kind of notice" and "some kind of hearing" is required. In that case, it appears that a confrontation with the immediate disciplinarian himself was adequate.

As the majority point out, the Court of Appeals for the Fifth Circuit has held in Davis v. Vandiver, 494 F.2d 830, 832 (5 Cir. 1974), that where a full-scale evidentiary hearing is provided after termination (as here) it is only necessary that there be notice of the charge and a reasonable opportunity to respond prior to termination.

I do not believe that the evidence here will support a finding that the plaintiffs did not have a reasonable opportunity to respond prior to discharge. Logically, it would appear that any need for a pre-termination response or confrontation in a situation such as is presented here would be simply to eliminate obvious errors, leaving decisions as to the finer points of judgment for the required post-termination full-scale hearing. A simple telephone call and 20 minutes of time may be adequate for that limited purpose. The record will not demonstrate to the contrary, and I believe that substantial evidence of a lack of practical due process ought to be required before this Court holds a law of the State of Georgia unconstitutional.